**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | |
|---|---|
| **MICHAEL JENKS, SR.,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| **vs.** | )    **CASE NO.: 4:13-cv-00177-BAE-GRS** |
| | ) |
| **INTERNATIONAL LONGSHOREMEN'S** | ) |
| **ASSOCIATION LOCAL NUMBER 1414,** | ) |
| **SAVANNAH, GEORGIA,** | ) |
| | ) |
|     **Defendant.** | ) |

***BRIEF IN SUPPORT OF THE UNION'S***
***MOTION FOR SUMMARY JUDGMENT***

**I.**    **Introduction.**

    Defendant, International Longshoremen's Association, Local 1414 (hereinafter the "Union"),

by counsel, and pursuant to Fed. R. Civ. P. Rule 56, hereby submits this *Brief in Support of the*

*Union's Motion for Summary Judgment*. The Union submits this *Motion* on the grounds that Plaintiff

is unable to demonstrate that the Union: (1) violated Plaintiff's rights as a member to be free from

unfair discipline under 29 U.S.C. 529; (2) violated Plaintiff's rights as a member to express his views,

arguments, and opinions under 29 U.S.C. 411(A)(1); (3) violated Plaintiff's rights as a member to due

process under 29 U.S.C. 411(A)(5); or (4) breached any duty of fair representation.

**II.**    **Background Facts.**

**A.**    **Statement of the Case.**

    Plaintiff was the Chairman of the Union's Board of Directors.[1] During his term, Plaintiff was

found guilty by the Union's Executive Board[2] of violating Article XII, Rule 2 of the *ILA Local 1414*

---

[1] Doc. 15, *Plaintiff's First Amended Complaint* (hereinafter "*Complaint*"), P. 2, ¶7.

[2] **Ex. "1"**, *Aff. of Willie J. Seymore*, P.1, ¶4, Att. "A": *ILA Local 1414 Constitution and Bylaws,* P. 15-16, *Article VII, Duties and Powers of Officers, Section 11(a).* "The Executive Board is the highest governing authority within the Local Union between membership meetings..." **Ex. "4(A)"**, *Depo. of Timothy Mackey*, P.67-68, L.12-25;

*Constitution and By-Laws* on April 24, 2012.[3] The degree of punishment for said violation was turned

over to the membership and the membership voted to remove Plaintiff from office on June 11, 2012.[4]

Plaintiff appealed his removal to the South Atlantic & Gulf Coast District (hereinafter referred to as

the "District Union", which is the intermediate appellate body) on July 5, 2012.[5] After a de novo

hearing in front of a disinterested committee on August 7, 2012,[6] the District Union remanded the case

to the Union membership for a re-vote on Plaintiff's removal from office.[7] Notice was provided to the

membership,[8] and the Union membership again voted to remove Plaintiff from office at a meeting on

November 12, 2012.[9] Plaintiff appealed to the International Union (final appellate body).[10] The

International Union upheld the Plaintiff's removal from office on February 25, 2013.[11] Plaintiff filed

---

and L.1-2; and **Ex. "1(A)"**, *Depo. of Willie J. Seymore*, P.32, L. 1-16; and P.63, L.14-22.

[3]**Ex. "4(A)"**, *Depo of Timothy Mackey*, P.35, L.11 thru P.40, L.9; and **Ex. "4"**, *Aff. of Timothy Mackey*, P.2, ¶5, Att. "E": *April 24, 2012 Executive Board Meeting Minutes*; P.2, ¶6, Att. "F": *May 12, 2012 Regular Meeting Minutes*.

[4]**Ex. "1(A)"**, *Depo. of Willie J. Seymore*, P.32, L. 1-16; P.63, L.14-22; and P. 64-65; L.7-25 and L.1-16;**Ex. "4"**, *Aff. of Timothy Mackey*, P.2, ¶5-7, Att. "E": *April 24, 2012 Executive Board Meeting Minutes*; Att. "F": *May 14, 2012 Regular Meeting Minutes*; Att. "G": *May 28, 2012 Regular Meeting Minutes*; Att. "H", *June 11, 2012 Regular Meeting Minutes*; and **Ex. "4(A)"**, *Depo of Timothy Mackey*, P.35, L.11 thru P.40, L.9.

[5]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.35, L.22 thru P.41, L.1; attached thereto as Ex. "A", attached thereto as *2012-07-05, Ltr from Jenks to Secretary Dickens requesting Appeal* (Ex. "A", P.18-19 of 28); **Ex. "1"**, *Aff. of Willie J. Seymore*, P.4, ¶14, Att. "L": *July 5, 2012 Jenks Appeal to the District Union*.

[6]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.43, L.5 thru P.46, L.9.

[7]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.5, ¶18, Att. "N": *September 28, 2012 District Determination*; Att. "O": *October 15, 2012 Correspondence Attaching the September 28, 2012 District Determination*; and **Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.60, L.9-12; P.48, L.2-11.

[8]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.5, ¶19, Att. "P": *October 25, 2012 notice Regarding District Order and Re-vote*; **Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.61, L.16 thru P.62, L.14.

[9]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.62, L.11-14; **Ex. "4"**, *Aff. of Timothy Mackey*, P.3, ¶11, Att. "K": *November 12, 2012 Regular Meeting Minutes*; **Ex. "1"**, *Aff. of Willie J. Seymore*, P.5, ¶20.

[10]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.16-17, L.23-25 and L.1-11; attached thereto as Ex. "A", *2012-12-12, Jenks' Appeal to International and Supporting Documents Totaling Twenty-Eight (28) Pages*.

[11]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.5-6, ¶23, Att. "S": *February 25, 2013 International Determination Regarding Jenks Appeal*; **Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.65, L.12 thru P.66, L.3; attached thereto as Ex. "O", *February 25, 2013 International Determination Regarding Jenks Appeal*.

his *Complaint* on July 25, 2013 and his *First Amended Complaint* incorporating the *Original Complaint* on November 15, 2013.[12] Plaintiff filed a *Motion for a Preliminary Injunction* on November 21, 2013[13] seeking an injunction of elections scheduled for December 3, 2013, which was denied on November 25, 2013.[14] Plaintiff subsequently amended his *Complaint* again on December 12, 2013.[15]

## B.    Intra-Union Procedural History

### (1)    Initial Grievances.

The past Union President wrote two (2) charges against Plaintiff on February 24, 2012 based on separate incidences and separate provisions of the *ILA Local 1414 Constitution and By-Laws*.[16] Plaintiff then wrote a charge against the past Union President on February 27, 2012.[17] It is the normal procedure when two (2) officers are involved, that the charges go to the Executive Board.[18]

### (a)    February 24, 2012 Grievance Against Plaintiff (Article XII, Rule 3)

The first charge written against Plaintiff on February 24, 2012, was based on Article XII, Rule 3 of the *ILA Local 1414 Constitution and By-Laws* and stated the factual predicate as follows:

> "On February 16, 2012, I, Willie J. Seymore, President, called a Executive Board Meeting...During the meeting, Mr. Michael Jenks, Sr., used abusive, derogatory, and insulting language against one of the Board of Directors members. Therefore, I am hereby charging Mr. Michael Jenks, Sr., under Article XII, Rule 3..."[19]

---

[12]Doc. 1, *Complaint*; & Doc. 15, *Plaintiff's First Amended Complaint*.

[13]Doc. 17, *Motion for Preliminary Injunction*; & Doc. 18, *Brief in Support of Motion for Temporary Injunction*.

[14]Doc. 19, *Order Denying Injunction and Granting Motion to Amend*.

[15]Doc. 21, *Plaintiff's Second Amended Complaint*.

[16]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.17, L.21-25 thru P.18, L. 1-2; attached thereto as Ex. "B", *2012-02-24, Charge against Jenks (Article XII, Rule 2)*; and Ex. "C", *2012-02-24, Charge against Jenks (Article XII, Rule 3)*; and **Ex. "4"**, *Aff. of Timothy Mackey*, P.1-2, ¶4, Att. "A", and Att. "B".

[17]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.19-20, L.6-25 and L.1-25; attached thereto as Ex. "D", *2012-02-27, Ltr from Jenks to Board re Emergency Executive Board Meeting on 02/15/12*.

[18]**Ex. "1(A)"**, *Depo. of Willie J. Seymore*, P.35, L.14-16.

[19]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.24, L.5-13; attached thereto as Ex. "C", *2012-02-24, Charge against Jenks (Article XII, Rule 3)*; and **Ex. "4"**, *Aff. of Timothy Mackey*, P.1-2, ¶4, Att. "B".

     **(b)**    *February 24, 2012 Grievance Against Plaintiff (Article XII, Rule 2)*

The second charge written against Plaintiff on February 24, 2012, was based on Article XII,

Rule 2 of the *ILA Local 1414 Constitution and By-Laws* and stated the factual predicate as follows:

> "I, Willie J. Seymore, President of ILA Local 1414, have discovered mishandling of
> the Joseph White Room by Michael Jenks, Sr. Mr. Jenks actions in the mis-use of the
> multipurpose room is truly unbecoming of an officer. Therefore, I am charging Mr.
> Michael Jenks, Sr., under Article XII Rule 2 of the Constitution and Bylaws which
> states: 'All Officers shall be subject to fines, removal, or expulsion from office who
> is found guilty of dishonesty, conduct unbecoming of an Officer, or conduct
> detrimental to the welfare of Local 1414...'"[20]

     **(c)**    *February 27, 2012 Grievance by Plaintiff Against President Willie J.*
                   *Seymore (Article XII, Rule 2 and Article XII, Rule 11)*

On February 27, 2012, Plaintiff wrote a charge against the past Union President, based on

Article XII, Rule 2 and Article XII, Rule 11 of the *ILA Local 1414 Constitution and By-Laws*.[21]

**(2)**     **March 20, 2012 Executive Board Meeting.**

At the Executive Board meeting on March 20, 2012, all three (3) charges were addressed, but

only the charge against Plaintiff for abusive language under Article XII, Rule 3 was completed.[22] After

a hearing on said charge, Plaintiff was found guilty and fined Two Hundred Fifty ($250.00) Dollars.[23]

Thereafter, Plaintiff and the past Union President agreed that the hearing on the charge against

the past Union President which began at the meeting would be continued.[24] Regarding the charge

against Plaintiff under *Article XII, Rule 2*, it was agreed that the past Union President would serve

Plaintiff with an amended charge to include more details as needed to comport with due process.[25]

---

[20]**Ex. "4"**, *Aff. of Timothy Mackey*, P.1-2, ¶4, Att. "A"; and **Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.17, L.21-25 thru P.18, L. 1-2; attached thereto as Ex. "B", *2012-02-24, Charge against Jenks (Article XII, Rule 2)*.

[21]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.19-20, L.6-25 and L.1-25; attached thereto as Ex. "D", *2012-02-27, Ltr from Jenks to Board re Emergency Executive Board Meeting on 02/15/12*.

[22]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.21, L.1 thru P.24, L.18.

[23]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.24, L.10-13.

[24]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.21, L.1 thru P.24, L.18; attached thereto as Ex. "E", *2012-03-20, Executive Board Committee terms of Agreement*.

[25]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.21, L.1 thru P.24, L.18; attached thereto as Ex. "E", *2012-03-20, Executive Board Committee terms of Agreement*.

**(3)** ***April 9, 2012 Grievance** Alleging Plaintiff's Behavior Was "Dishonest, Detrimental to the Welfare of Local 1414 Union, And/or Conduct Unbecoming of an Union Officer" in Violation of Art. XII, R. 2, ILA Local 1414 Constitution and By-laws.*

The past Union President rewrote the charge against Plaintiff based on Article XII, Rule 2 of

the *ILA Local 1414 Constitution and By-Laws*, which stated the factual predicate as follows:

"October 01, 2011, ILA Local 1414 paid Mr. Michael Jenks, Sr., for four (4) hours at the overtime rate for working in the Joseph White Room for the Troy Davis funeral repast. It has come to the attention of the Union that Mr. Jenks, Sr. requested and received additional funding in reference to said function."[26]

**(4)     April 12, 2012 Executive Board Meeting.**

At the April 12, 2012 Executive Board meeting, Plaintiff dropped his February 27, 2012

charges against the past Union President.[27] Also at the meeting, Plaintiff was served the *April 9, 2012*

*Grievance* and the hearing on said charge was set for April 24, 2012 at an Executive Board hearing.[28]

**(5)     April 23, 2012 Membership Meeting.**

At the April 23, 2012 Regular Membership meeting, Plaintiff appealed to the membership and

asked them to drop the Two Hundred Fifty ($250.00) Dollar fine for abusive language under Article

XII, Rule 3.[29] The membership voted by the count of  Fifteen (15) votes to Thirty Four (34) votes for

the fine to stand.[30] The result of this membership vote was never appealed to the District Union.[31]

---

[26]**Ex. "4"**, *Aff. of Timothy Mackey*, P.1-2, ¶4, Att. "C": *April 9, 2012 Charge for Violation of Article XII, Rule 2*; **Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.17, L.12-20; attached thereto as Ex. "A", *2012-04-09, Charge against Jenks (Article XII, Rule 2)*; and P.19, L.24-25 through P.20, L. 1-25.

[27]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.24-25, L.19-25 and L.1-7; attached thereto as Ex. "G", *2012-04-12, Jenks Dismissal of Charges against Seymore*; **Ex. "4"**, *Aff. of Timothy Mackey*, P. 2, ¶ 5, Att. "D": *April 12, 2012 Executive Board Meeting Minutes*.

[28]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.23, L.6-25; P. 25, L.8-16; attached thereto as Ex. "F", *2012-04-12, Acknowledgment of Service for violation of Article XII, Rule 2 of Constitution and Bylaws of ILA Local 1414*; **Ex. "4"**, *Aff. of Timothy Mackey*, P.1-2, ¶4, Att. "C": *April 9, 2012 Charge for Violation of Article XII, Rule 2*.

[29]**Ex. "4(A)"**, *Depo of Timothy Mackey*, P.22, L.1-24.

[30]**Ex. "4(A)"**, *Depo of Timothy Mackey*, P.23, L.3-8.

[31]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.16-17, L.23-25 and L.1-11; attached thereto as Ex. "A", *2012-12-12, Jenks' Appeal to International and Supporting Documents*.

**(6)      April 24, 2012 Executive Board Meeting.**

On April 24, 2012, the Union's Executive Board held a hearing on the *April 9, 2012 Grievance* against Plaintiff.[32] Plaintiff called witnesses, submitted documentation, and presented testimony at the hearing.[33] The Union Executive Board reviewed all of the evidence, and after finding Plaintiff guilty, recommended a fine of Two Thousand Five Hundred ($2,500.00) Dollars to the membership.[34]

**(7)      May 14, 2012 Membership Meeting.**

At the May 14, 2012 membership meeting the minutes from the April 24, 2012 Executive Board Meeting were read and entered into the record, but were not adopted at this time.[35]

**(8)      May 28, 2012 Membership Meeting**.

At the May 28, 2012 membership meeting, Plaintiff appealed to the membership and asked them to drop the Two Thousand Five Hundred ($2,500.00) Dollar fine recommended by the Executive Board for conduct unbecoming of a Union Officer under Article XII, Rule 2.[36] During the meeting, various motions and substitute motions regarding Plaintiff's punishment were put before the membership, including a two-part motion to remove Plaintiff from office and to fine him.[37] After long

---

[32]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.25, L.8 thru P.32, L.4; attached thereto as Ex. "A", *2012-12-12, Jenks' Appeal to International and Supporting Documents* (P.1-13 of 28); and **Ex. "4"**, *Aff. of Timothy Mackey*, P.2, ¶5, Att. "E": *April 24, 2012 Exec. Bd. Meeting Minutes*; P.2, ¶6, Att. "F": *May 12, 2012 Regular Meeting Minutes*.

[33]**Ex. "4(A)"**, *Depo of Timothy Mackey*, P.35, L.11 thru P.40, L.9; and **Ex. "4"**, *Aff. of Timothy Mackey*, P.2, ¶5, Att. "E": *April 24, 2012 Exec. Bd. Meeting Minutes*; P.2, ¶6, Att. "F": *May 12, 2012 Regular Meeting Minutes*.

[34]**Ex. "1(A)"**, *Depo. of Willie J. Seymore*, P.32, L. 1-16; P.63, L.14-22; and P. 64-65; L.7-25 and L.1-16: "[A]ll recommendations got to come to the membership...From any board. The membership got the last approval on -- anything coming through this union hall the membership got the last word. And that's been the practice of this union for my 37 years of being here."; **Ex. "4"**, *Aff. of Timothy Mackey*, P.2, ¶5-7, Att. "E": *April 24, 2012 Exec. Bd Minutes*; Att. "F": *May 14, 2012 Regular Meeting Minutes*; Att. "G": *May 28, 2012 Regular Meeting Minutes*; Att. "H", *June 11, 2012 Regular Meeting Minutes*; **Ex. "4(A)"**, *Depo of Timothy Mackey*, P.35, L.11 thru P.40, L.9.

[35]**Ex. "4(A)"**, *Depo. of Timothy Mackey*, P.36, L.17 thru P.37, L.25; P.41,L.5-9; P.60, L.8-25 thru L.64, L.3

[36]**Ex. "4(A)"**, *Depo. of Timothy Mackey*, P.58, L.12-21.

[37]**Ex. "4(A)"**, *Depo. of Timothy Mackey*, P.68, L.6-13; **Ex. "4"**, *Aff. of Timothy Mackey*, P.2, ¶7, Att. "G": *May 28, 2012 Reg. Mtg Minutes*; **Ex. "5"**, *Depo. of Michael Jenks, Sr.*; attached thereto as Ex. "A", *2012-12-12, Jenks' Appeal to International and Supporting Documents* (*2012-10-15, Ltr from Fitzgerald to Seymore & Jenks attaching 09-28-12 District Determination*, P.20-23 of 28); **Ex. "1(A)"**, *Depo. of Willie J. Seymore*, P.56, L. 16-23.

debate only the portion of the two-part motion concerning assessment of the fine, and not the portion of the motion to remove Plaintiff from office was voted upon and the fine as punishment was rejected.[38] The meeting was concluded without hearing the portion of the motion to remove Plaintiff.[39]

    **(9)**    **June 11, 2012 Membership Meeting**.

At the next membership meeting on June 11, 2012, a motion was raised to adopt the minutes from the May 28, 2012 membership meeting, at which point two (2) not readiness questions were raised on the floor, which were: (1) that the *Minutes* from the May 28, 2012 membership meeting needed to be corrected to reflect the proper vote totals from that meeting; and (2) that the second part of the motion to remove Plaintiff from office had not been addressed, at which time a secret ballot vote was taken and Plaintiff was removed from office pursuant to a membership vote.[40]

    **(10)**    ***June 15, 2012 Communications with the District Union***.

On June 15, 2012, the past Union President sent written correspondence to the District Union to obtain guidance regarding Plaintiff's appeal rights.[41] Also on the same day, Plaintiff communicated via telephone with the District Union's President, Mr. Clyde Fitzgerald in Houston, Texas, regarding the membership vote on June 11, 2012 removing him from office.[42] Thereafter, on that same day, likely a result of the Plaintiff's and the Union's communications, the General Counsel for the District Union responded with written instructions to the past Union President regarding the proper procedure for Plaintiff to follow in order to appeal the membership vote removing him from office.[43]

---

[38] **Ex. "4(A)"**, *Depo. of Timothy Mackey*, P.64-65, L.23-25, L.1-9; **Ex. "4"**, *Aff. of Timothy Mackey*, P.2, ¶8, Att. "H": *June 11, 2012 Regular Meeting Minutes*; **Ex. "1(A)"**, *Depo. of Willie J. Seymore*, P.55, L.9 thru P.60, L.15.

[39] **Ex. "4(A)"**, *Depo of Timothy Mackey*, P.68, L.6-13.

[40] **Ex. "4"**, *Aff. of Timothy Mackey*, P.2, ¶8, Att. "H": *June 11, 2012 Reg. Mtg Minutes*; **Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.16, L.7-9; P.33, L.22 thru P.34, L.23; attached thereto as Ex. "A", *2012-12-12, Jenks' Appeal to International and Supporting Documents (2012-10-15, Ltr from Fitzgerald to Seymore & Jenks attaching 09-28-12 District Determination*, P.20-23 of 28)); **Ex. "1(A)"**, *Depo. of Willie J. Seymore*, P. 64.L.7 thru P.65,L.16.

[41] **Ex. "1"**, *Aff. of Willie J. Seymore*, P.3-4, ¶12, Att. "J": *June 12, 2012 Corr. to the District Union*.

[42] **Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.35, L.22 thru P.41, L.1.

[43] **Ex. "1"**, *Aff. of Willie J. Seymore*, P.4, ¶13, Att. "K", *June 15, 2012 Corr. From District Union*.

(11)     **June 25, 2012 Membership Meeting**.

At the June 25, 2012 membership meeting, the past Union President had the instructions from the District Union's General Counsel read to the membership regarding the procedure for Plaintiff to follow regarding appealing his removal from office, which was that he follow *Article XIX* of the *ILA International Constitution and Bylaws* and appeal in writing to the District Union.[44]

Despite this instruction, Plaintiff attempted to orally appeal his removal to the Union's membership.[45] Acting on the advice of the District Union, the past Union President did not allow Plaintiff's oral appeal.[46] Thereafter, various members were permitted to speak on the matter, but motions attempting to orally appeal Plaintiff's removal were not allowed to be brought to a vote.[47]

(12)     **Plaintiff's *July 5, 2012 Appeal* to the District Union.**

On July 5, 2012, Plaintiff submitted his appeal to the District Union of the June 11, 2012 membership vote to remove him from office.[48] In his *July 5, 2012 Appeal*, Plaintiff complained that at the June 25, 2012 membership meeting he was presented with information of the appeal process, but that he was not afforded the opportunity to present his: "Appeal process to the local membership before appealing to the District level."[49] *Article XIX* of the *ILA International Constitution and Bylaws*

---

[44]**Ex. "4"**, *Aff. of Timothy Mackey*, P.2, ¶9, Att. "I": *June 25, 2012 Reg. Mtg. Minutes*; **Ex. "1(A)"**, *Depo. of Willie J. Seymore*, P. 67; L.4-13; **Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.35, L.22 thru P.41, L.1; attached thereto as Ex. "H", *2012-06-27, Corr. from Jenks to District*, attached thereto was the *2012-06-12, Ltr from Jenks to Officers/Members* (Ex. "A", P.12-13 of 28) and *2012-06-22, Ltr re: 06-11-12 Meeting* (Ex. "A", P.14 of 28).

[45]**Ex. "4"**, *Aff. of Timothy Mackey*, P.2, ¶9, Att. "I": *June 25, 2012 Regular Meeting Minutes*.

[46]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.4, ¶13; **Ex. "4"**, *Aff. of Timothy Mackey*, P.2, ¶9, Att. "I": *June 25, 2012 Regular Meeting Minutes*.

[47]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.69, L.3 thru 9; **Ex. "4"**, *Aff. of Timothy Mackey*, P.2, ¶9, Att. "I": *June 25, 2012 Regular Meeting Minutes*; **Ex. "1(A)"**, *Depo. of Willie J. Seymore*, P. 68; L.12-18.

[48]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.35, L.22 thru P.41, L.1; attached thereto as Ex. "A", attached thereto as *2012-07-05, Ltr from Jenks to Secretary Dickens requesting Appeal* (Ex. "A", P.18-19 of 28); **Ex. "1"**, *Aff. of Willie J. Seymore*, P.4, ¶14, Att. "L": *July 5, 2012 Jenks Appeal to the District Union*.

[49]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, attached thereto as Ex. "A", attached thereto as *2012-07-05, Ltr from Jenks to Secretary Dickens requesting Appeal* (Ex. "A", P.18-19 of 28).

is, standing alone, sufficient to show that the Plaintiff's action in attempting to orally appeal to the membership his removal at the June 25, 2012 membership meeting was procedurally improper.[50]

*Article XIX, Section 1(c)* of the *ILA International Constitution and Bylaws* provides that appeals from the decision of a membership meeting of a local union shall be to the district, not back to the membership.[51] *Article XIX, Section 3* of the *ILA International Constitution and Bylaws* requires that all appeals shall be in writing (*not orally*).[52] *Article XIX, Section 4* of the *ILA International Constitution and Bylaws* provides that "[a]n appeal taken under this Article shall not operate to stay the action or decision appealed from unless the body to which the appeal is taken shall so order."[53] In this case, there was no such order and Plaintiff did not request a stay from the District Union.[54]

### (a)    August 7, 2012 District Hearing Committee De Novo Appeal.

The District Union appointed a three (3) person committee comprised of Union officials and an attorney to hear Plaintiff's appeal.[55] The committee conducted a de novo hearing on August 7, 2012 where Plaintiff presented his evidence, including witnesses.[56] The evidence taken at the hearing showed that Plaintiff was paid by the Union to oversee the leasing of the Union's multi-purpose room.[57] Plaintiff submitted an invoice requesting payment from a third party who rented the room from

---

[50]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.2,¶5, <u>Att. "B"</u>: *ILA Intl. Const. & Bylaws*; P.43, *Art. XIX, Appeals, §1(c)*.

[51]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.2,¶5, <u>Att. "B"</u>: *ILA Intl. Const. & Bylaws*; P.43, *Art. XIX, Appeals, §1(c)*.

[52]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.2,¶5, <u>Att. "B"</u>: *ILA Intl. Const. & Bylaws*; P.43-44, *Art. XIX, Appeals, §3*.

[53]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.2,¶5, <u>Att. "B"</u>: *ILA Intl. Const. & Bylaws*; P.44, *Art. XIX, Appeals, §4*.

[54]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.16-17, L.23-25 and L.1-11; attached thereto as <u>Ex. "A"</u>, *2012-12-12, Jenks' Appeal to International and Supporting Documents Totaling Twenty-Eight (28) Pages*.

[55]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.43, L.5 thru P.46, L.9; **Ex. "1"**, *Aff. of Willie J. Seymore*, P.4, ¶17, <u>Att. "M"</u>: *July 24, 2012 Correspondence form the District Union Appointing the De Novo Hearing Committee*.

[56]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.43, L.5 thru P.46, L.9.

[57]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.3, ¶11; P.5, ¶18, <u>Att. "N"</u>: *September 28, 2012 District Determination*.

the Union.[58] Plaintiff was personally paid by the third party with a check for this invoice and personally cashed the check.[59] Plaintiff claimed that he paid the money to unknown members of the Union.[60] Plaintiff could not identify any of the individuals.[61] Plaintiff called witnesses, but none of the witnesses could identify the individuals who were allegedly paid the money.[62] Plaintiff submitted documentation at the hearing.[63] Plaintiff presented testimony at the hearing.[64] Thereafter, on August 13, 2012, Plaintiff submitted additional evidence in the form of a post-hearing statement to the District Union for their consideration in his appeal.[65] The Union Executive Board reviewed all of the evidence.[66]

   **(b)**      *September 28, 2012 District Determination.*

   The committee made a recommendation, which the District Executive Board voted on and approved.[67] The District Union then submitted a directive dated September 28, 2012 to the Union that:

> "the action of the general membership at the June 11, 2012 meeting be redone. The general membership to have another opportunity to vote on the motion whether Michael Jenks should be removed from his office at Local 1414, upon proper notice, either by a special called meeting or at a general membership meeting."[68]

---

[58]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.3, ¶11; P.5, ¶18, <u>Att. "N"</u>: *September 28, 2012 District Determination.*

[59]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.3, ¶11; P.5, ¶18, <u>Att. "N"</u>: *September 28, 2012 District Determination.*

[60]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.3, ¶11; P.5, ¶18, <u>Att. "N"</u>: *September 28, 2012 District Determination.*

[61]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.3, ¶11; P.5, ¶18, <u>Att. "N"</u>: *September 28, 2012 District Determination.*

[62]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.3, ¶11; P.5, ¶18, <u>Att. "N"</u>: *September 28, 2012 District Determination.*

[63]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.3, ¶11; P.5, ¶18, <u>Att. "N"</u>: *September 28, 2012 District Determination.*

[64]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.3, ¶11; P.5, ¶18, <u>Att. "N"</u>: *September 28, 2012 District Determination.*

[65]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.46, L.20 thru P.47, L.23.

[66]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.3, ¶11; P.5, ¶18, <u>Att. "N"</u>: *September 28, 2012 District Determination.*

[67]**Ex. "2(A)"**, *Depo. of Wilbert Rowell*, P.29, L.12 thru P.31, L.12.

[68]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.5, ¶18, <u>Att. "N"</u>: *September 28, 2012 District Determination*; <u>Att. "O"</u>: *October 15, 2012 Correspondence Attaching the September 28, 2012 District Determination*; **Ex. "2(A)"**, *Depo. of Wilbert Rowell*, P.29, L.12 thru P.31, L.12; **Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.60,L.9-12;P.48,L.2-11.

Plaintiff did not appeal the *September 28, 2012 District Determination* at this time, presumably because he thought the membership would vote in his favor at the November 12, 2012 meeting or because he thought he could just resign and escape the membership determination.[69]

### (13)   October 14, 2012 - Plaintiff First Tests Positive for Cocaine; and is Suspended from Working or Seeking Work in the Industry.

Plaintiff, along with others, took a random drug screen while working the operation and shift for his employer on October 14, 2013.[70] Plaintiff's specimen was sent to the laboratory for confirmation, and the Union received notice on October 18, 2012 that the laboratory confirmed that Plaintiff had tested positive for illegal drugs and would be suspended for ninety (90) days from working or seeking work in the longshore industry effective October 14, 2012.[71]

### (a)   Plaintiff's Suspension under the *Policy on Drugs* Was for Illegal Drugs, Not Legal Drugs as He Impliedly Misrepresents.

Plaintiff tested positive for cocaine while on the job site.[72] Plaintiff implies that he was found guilty of violating the policy on legal drugs or that he voluntarily sought treatment for drug addiction,[73] but this is simply not the case. Under the *Policy on Drugs*, if an on-site drug test renders a positive result for either a legal or illegal drug, the sample is sent to a drug testing laboratory for confirmation.[74]

---

[69]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.16, L.23 thru P.17, L.11; attached thereto as Ex. "A", *2012-12-12, Jenks' Appeal to International and Supporting Docs Totaling Twenty-Eight (28) Pg.'s.*

[70]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.2, ¶6, Att. "C": *October 15, 2012 Facsimile from GSA to the Union*; **Ex. "3(A)"**, *Subpoena to GSA and Response to Subpoena.*

[71]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.2, ¶7, Att. "D": *October 18, 2012 Correspondence from GSA to the Union Regarding Jenks Positive Drug Test and Resulting Suspension.*

[72]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.2, ¶6, Att. "C": *October 15, 2012 Facsimile from GSA to the Union*; **Ex. "3(A)"**, *Subpoena to GSA and Response to Subpoena.*

[73]Doc. 18-6, *Declaration of Michael Jenks*, P. 2, ¶4.

[74]**Ex. "3"**, *Aff. of Dee Griffin*, P.2, ¶5; **Ex. "3(A)"**, *Subpoena to GSA and Response to Subpoena.*

If the sample comes up positive for legal drugs, such as prescription medication, then a medical review officer contacts the employee and determines whether the employee has a valid prescription for the medication.[75] If the employee produces a valid prescription to the medical review officer, then the result is deemed a negative and the employee will not be suspended.[76]

### (b)      Plaintiff Did Not File A Grievance, But Admitted Guilt.

If the employee does not have a valid prescription for a legal drug, or if the sample comes up positive for illegal drugs, such as cocaine or heroin, then the employee must determine whether or not he wishes to proceed under the *Collective Bargaining Agreement's* grievance procedures to contest the validity of the positive test results.[77] In this case, Plaintiff was not found to have used illegally obtained prescription drugs, he tested positive for cocaine.[78] Plaintiff did not dispute the positive drug test results under the grievance procedures.[79] On the contrary, Plaintiff admitted his guilt,[80] and on October 19, 2012, signed and acknowledged his receipt of copies of the documents explaining the process of seeking reinstatement into the industry.[81] Plaintiff was reinstated on November 21, 2012.[82]

---

[75]**Ex. "3"**, *Aff. of Dee Griffin*, P.2, ¶5.

[76]**Ex. "3"**, *Aff. of Dee Griffin*, P.2, ¶5.

[77]**Ex. "3"**, *Aff. of Dee Griffin*, P.1, ¶2, attached thereto as Att. "A", *Policy on Drugs* contained in the *CBA*, P.41, *Grievance Procedure*.

[78]**Ex. "3"**, *Aff. of Dee Griffin*, P.2, ¶¶5-6; **Ex. "3(A)"**, *Subpoena to GSA and Response to Subpoena*.

[79]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.3, ¶9.

[80]Doc. 18-6, *Declaration of Michael Jenks*, P. 2, ¶4.

[81]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.2-3, ¶8, Att. "D": *October 18, 2012 Correspondence from GSA to the Union Regarding Jenks Positive Drug Test and Resulting Suspension*; Att. "E": *October 19, 2012 Acknowledgment Signed by Mr. Jenks*; Att. "F": *Three (3) Year Random Consent Form Signed by Mr. Jenks*; and Att. "G": *Drug Consent Form*.

[82]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.3, ¶¶9-10, Att. "H": *November 16, 2012 Facsimile from GSA to the Union*; Att. "I": *November 21, 2012 Facsimile from GSA to the Union*.

(14)     **October 22, 2012 Membership Meeting.**

Plaintiff submitted two (2) correspondences to the Union at 4:20 PM on October 22, 2012 purporting to resign from his position as chairman of the board of directors (not the board of directors itself) and from the office of alternate trustee.[83] The *ILA Local 1414 Constitution and By-Laws* requires resignations to be submitted in writing to the Recording Secretary and accepted by the membership to be effective.[84]  At the October 22, 2012 membership meeting, Plaintiff attempted to have his resignation letter accepted by the membership through a membership vote in violation of the twenty-four (24) hour rule of the *ILA Local 1414 Constitution and By-Laws*.[85]

(15)     *October 24, 2012 Charge Against Plaintiff*.

A charge was written by a Union member against Plaintiff on October 24, 2012 based on *Art. XII, R. 2* of the *ILA Local 1414 Constitution and By-Laws* and stated the factual predicate as follows:

> "On Sunday, October 14, 2012 while under a special random drug test...Jenks tested positive for drugs on the Georgia Ports. At this time Mr. Jenks was still an officer of ILA Local 1414 and was under investigation with the district of ILA for his duties unbecoming of an officer of the ILA Local 1414 Union. Therefore I am charging Mr. Michael Jenks with Article XII rule 2 of our Constitution and By-Laws."[86]

---

[83]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P. 60, L24 thru P.61, L.19; and P.16-17, L.23-25 and L.1-11; attached thereto as Ex. "A", *2012-12-12, Jenks' Appeal to International and Supporting Documents Totaling Twenty-Eight (28) Pages*; attached thereto *2012-10-22, Local 1414 Resignation Letter* (Ex. "A", P.26 of 28) and *2012-10-22, ILA-GSA Funds Resignation Letter* (Ex. "A", P.27 of 28).

[84]**Ex. "1(A)"**, *Depo. of Willie J. Seymore*, P. 13; L.1-18; P.82, L.3-10; **Ex. "1"**, *Aff. of Willie J. Seymore*, P.1, ¶4, Att. "A": *ILA Local 1414 Constitution and By-Laws*, P.47, *Art. XXII, Rules of Order, Section 2*: "All resolutions and resignations shall be submitted in writing to the Recording Secretary."

[85]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.1, ¶4, Att. "A": *ILA Local 1414 Constitution and By-Laws*, P.3-4, *Article IV, Meeting, Section 3*: "Section 3. No matter shall be called up for a vote unless it has been presented to the President and the Recording Secretary in writing for placement on the agenda at least 24 hours prior to the meeting, or unless it has been placed on the agenda by discussion at a prior meeting. This is not to be interpreted to deny any member the right to free discussion on any issues at any meeting."

[86]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.51, L.16 thru P.53, L.14; attached thereto as Ex. "I", *2012-10-24, Latreana Johnson Charge Against Jenks*.

(16)   *October 25, 2012 Notice Regarding Re-vote on Removal*.

Thereafter, written notice was posted in all conspicuous places in the Union hiring hall on or before October 25, 2012 informing the entire membership, including Plaintiff, that a new vote would be held at the November 12, 2012 membership meeting.[87] Plaintiff had ample opportunity to encourage his supporters to attend and vote at the upcoming membership meeting.[88]

The *October 25, 2012 Notice* regarding the re-vote on removal stated as follows:

"RE-VOTE NOTIFICATION IN COMPLIANCE WITH THE RECOMMENDATION FROM THE SOUTH ATLANTIC & GULF COAST DISTRICT ON WHETHER MICHAEL JENKS WILL BE REMOVED FROM OFFICE. A VOTE WILL BE TAKEN ON MONDAY, NOVEMBER 12, 2012 DURING OUR REGULAR MEMBERSHIP MEETING. ALL ACTIVE MEMBER IN ATTENDANCE IN GOOD-STANDING ARE ELIGIBLE TO VOTE."[89]

(17)   *November 12, 2012 Membership Meeting*.

At the November 12, 2012 membership meeting the Union's membership voted in favor of Plaintiff's removal from office by a count of Sixty-Three (63) in favor of removing Plaintiff from office and Forty-Three (43) in favor of Plaintiff remaining in office.[90] As a result of the vote affirming Plaintiff's removal from office, it was unnecessary to consider Plaintiff's purported resignation or the *October 24, 2012 Charge* against Plaintiff for conduct unbecoming an officer.

(18)   **Plaintiff's** *December 12, 2012 Appeal* **to the International Union**.

Mr. Jenks appealed both the *September 28, 2012 District Hearing Committee Determination* and the *November 12, 2012 Membership Vote* to remove him from office to the International Union

---

[87]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.5, ¶19, <u>Att. "P"</u>: *October 25, 2012 Notice Regarding District Order*.

[88]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.61, L.16 thru P.62, L.14: "You got notice October 25th, 2012 that there was going to be the revote on November 12th, 2012; is that right? A. Yes...Q. You had an opportunity to get your supporters out to vote at the election; right? A. No. Q. You didn't -- you had notice on the 25th it was November 12th that the vote was to take place. You had 17 days in between there to talk to people about coming to vote in your favor; isn't that right? A. Well, I didn't -- well, yes."

[89]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.5, ¶19, <u>Att. "P"</u>: *October 25, 2012 Notice Regarding District Order*.

[90]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.62, L.11-14; **Ex. "4"**, *Aff. of Timothy Mackey*, P.3, ¶11, <u>Att. "K"</u>: *November 12, 2012 Regular Meeting Minutes*; **Ex. "1"**, *Aff. of Willie J. Seymore*, P.5, ¶20.

on December 12, 2012 and attached Nineteen (19) pieces of documentary evidence.[91] On January 14, 2013, the International Union sent notice to the Plaintiff that the International Union would review all documents submitted by Plaintiff before issuing a written decision and that Plaintiff had the opportunity to submit additional documentary evidence for consideration during the appeal review process.[92] Thereafter, on February 7, 2013, Plaintiff submitted additional evidence in the form of a supplement to his appeal to the International Union for their consideration in his appeal.[93] On February 25, 2013, the International Union determined that Plaintiff's appeal of the September 28, 2012 determination was untimely;[94] and that the November 12, 2012 vote was valid.[95]

## C.      Eligibility to be Nominated for Office in the Union.

All officers in the Union are nominated and elected in accordance with the Landrum-Griffin Act;[96] relevant provisions of the *ILA Local 1414 Constitution and By-Laws*,[97] and by reference, the *ILA International Constitution and Bylaws*.[98] In this regard, the *ILA Local 1414 Constitution and By-Laws* may not be inconsistent with provisions of the International Union's governing documents.[99]

---

[91]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.16-17, L.23-25 and L.1-11; attached thereto as Ex. "A", *2012-12-12, Jenks' Appeal to International and Supporting Documents Totaling Twenty-Eight (28) Pages.*

[92]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P. 64, L.4-22; attached thereto as Ex. "M", *2013-01-14, Corr. from Intl. Union President to Jenks Regarding Appeal.*

[93]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.64, L.23 thru P.65, L.11; attached thereto as Ex. "N", *2013-02-07, Correspondence to International Union President from Jenks - Supplement to Appeal.*

[94]**Ex. "1"**, *Aff. of Willie J. Seymour*, P.5-6, ¶23, Att. "S": *February 25, 2013 International Determination Regarding Jenks Appeal*; **Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.65, L.12 thru P.66, L.3; attached thereto as Ex. "O", *February 25, 2013 International Determination Regarding Jenks Appeal.*

[95]*Id.*

[96]29 U.S.C. 504(a): persons convicted within 13 years of any of the crimes stated therein are ineligible to hold office and any person (including a labor organization) who willfully violates the section is guilty of a crime.

[97]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.1, ¶4, Att. "A": *ILA Local 1414 Constitution and Bylaws, Article VI, Nomination and Election of Officers, Sections 1 thru 3;* and P.26, *Article XII, Rules of Conduct Discipline, Rule 2.*

[98]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.2, ¶5, Att. "B": *ILA Intl. Const. & Bylaws, Art. XIII, Section 3.*

[99]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.2, ¶5, Att. "B": *ILA Intl. Const. & Bylaws, Art. XII, Section 5.*

(1)     **Investigative Process Prior to General Election Held on December 3, 2013.**

Preceding nominations for the general election described in *ILA Local 1414 Constitution and By-Laws, Article VI, Sections 1 through 3*, the President of the District Union appointed ILA officials, who were not officers or members of the Union, to investigate the eligibility of all candidates for office.[100] Mr. Wilbert Rowell, Assistant Secretary of the District Union, was put in charge of overseeing the Union's December 3, 2013 general election and was in charge of the investigation of the potential nominees.[101] The investigative process utilized on each potential nominee before they were allowed to be on the election ballot involved personnel and criminal background checks,[102] which were performed by union attorneys and were based on the Union's personnel records, and the criminal background checks were performed by utilizing a computer generated person search database.[103]

(a)     **Personnel Record Checks.**

The Union's personnel records were reviewed to determine whether each of the potential nominees had served any portion of a suspension during the year preceding the nomination date.[104] If the candidate had, he was ruled ineligible to run for office because he was not eligible under the *ILA International Constitution and Bylaws* prior to the nomination meeting as required by *Article XIII, Section 3*.[105] Plaintiff was one of the potential nominees found to have served a portion of his suspension for illegal drugs during the year preceding the November 11, 2013 nomination date and as a result was determined to be ineligible.[106]

---

[100]**Ex. "2"**, *Aff. of Wilbert Rowell*, P.1, ¶2; **Ex. "2(A)"**, *Depo. of Wilbert Rowell*, P.12, L.9 thru P.13, L.11.

[101]**Ex. "2"**, *Aff. of Wilbert Rowell*, P.1, ¶2.

[102]**Ex. "2"**, *Aff. of Wilbert Rowell*, P.1, ¶3; **Ex. "2(A)"**, *Depo. of Wilbert Rowell*, P.12, L.9 thru P.13, L.11.

[103]**Ex. "2"**, *Aff. of Wilbert Rowell*, P.2, ¶6.

[104]**Ex. "2"**, *Aff. of Wilbert Rowell*, P.3, ¶10.

[105]**Ex. "2"**, *Aff. of Wilbert Rowell*, P.3, ¶10.

[106]**Ex. "2"**, *Aff. of Wilbert Rowell*, P.4, ¶16.

**(b)      Criminal Background Checks.**

In conducting the criminal background checks, LexisNexis' database was used to search for each candidate by social security number.[107]  Among other information, this search identified fifteen (15) individual potential nominees with some type of reported criminal history, including: minor traffic violations; arrests; and convictions for violating narcotics laws.[108] In compliance with the Landrum-Griffin Act, all of the listed charges were reviewed and it was determined that, of the fifteen (15) individuals identified, only six (6) required further investigation to determine whether their convictions precluded them from serving in office under 29 U.S.C. §504(a).[109]

As part of the further investigation, additional information was obtained on these individuals, including copies of relevant court records; sentencing orders; and records of the state law enforcement agencies in an effort to verify: (1) whether the conviction fell within 29 U.S.C. §504(a); (2) when the conviction occurred; and (3) when the candidate was released from imprisonment.[110]

Furthermore, interviews were conducted of the six (6) potentially ineligible nominees to inquire whether they had their citizenship rights fully restored or otherwise met the requirements of 29 U.S.C. §504(a).[111] If the candidate claimed to have had his full citizenship rights restored, the agency in charge of the restoration of rights process was contacted, however none of the potentially ineligible nominees rights had been restored.[112] Ultimately, as a result of the criminal background checks, only two (2) nominees were determined to be ineligible due to falling within the relevant thirteen (13) year

---

[107]**Ex. "2"**, *Aff. of Wilbert Rowell*, P.3, ¶11.

[108]**Ex. "2"**, *Aff. of Wilbert Rowell*, P.3, ¶11.

[109]**Ex. "2"**, *Aff. of Wilbert Rowell*, P.3, ¶11.

[110]**Ex. "2"**, *Aff. of Wilbert Rowell*, P.3-4, ¶13.

[111]**Ex. "2"**, *Aff. of Wilbert Rowell*, P.4, ¶14.

[112]**Ex. "2"**, *Aff. of Wilbert Rowell*, P.4, ¶14.

disability period created by 29 U.S.C. §504(a).[113] Potential nominees who were acquitted, nolle prossequi, or who's conviction was longer than thirteen (13) years from the nomination date were removed from the list of ineligible nominees and they were deemed eligible to be on the ballot.[114]

**(2)** ***November 19, 2013 Notice to Plaintiff Regarding Ineligibility to Be Nominated.***

On November 19, 2013, the District Union mailed correspondence to Plaintiff informing him of his ineligibility to be nominated.[115] Plaintiff was ineligible to be nominated for Union office under *ILA Local 1414 Constitution and By-Laws*, *Article XII, Rule 2*.[116] Plaintiff was also ineligible to be nominated for Union office under the *ILA International Constitution and Bylaws*, *Article XIII, Government of Local Unions*, *Section 3*.[117] The result of the District Union's November 19, 2013 eligibility determinations under both the *ILA International Constitution and Bylaws*, *Article XIII, Government of Local Unions*, *Section 3* and under the *ILA Local 1414 Constitution and By-Laws*, *Article XII, Rule 2* was never appealed to the District or the International Union.[118]

## III.    Legal Analysis.

### A.    Summary Judgment Standard.

In order to be entitled to summary judgment there must be no "issue as to any material fact," and "the moving party [must be] entitled to judgment as a matter of law."[119] The burden on the moving

---

[113]**Ex. "2"**, *Aff. of Wilbert Rowell*, P.4, ¶15.

[114]**Ex. "2"**, *Aff. of Wilbert Rowell*, P.3, ¶12.

[115]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.66, L.20 thru P.67, L.8; attached thereto as Ex. "Q", *2013-11-19, Ltr from W. Rowell Stating not Eligible for Officer Elections*.

[116]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.1, ¶4, Att. "A": *ILA Local 1414 Constitution and By-Laws*, P.26, *Article XII, Rules of Conduct and Discipline, Rule 2*.

[117]**Ex."1"**,  *Aff. of Willie J. Seymore*, P.2, ¶5, Att. "B": *ILA International Constitution and Bylaws*; P. 24, *Article XIII, Government of Local Unions*, *Section 3*.

[118]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.16-17, L.23-25 and L.1-11; attached thereto as Ex. "A", *2012-12-12, Jenks' Appeal to International and Supporting Documents Totaling Twenty-Eight (28) Pages*.

[119]Fed. R. Civ. P. 56(c).

party is a minimal one, and it does not necessarily require the *Motion* to contain evidentiary support negating the non-moving party's claim.[120] Once the moving party meets its initial burden, the burden shifts to the nonmoving party to come forward with evidence which shows there is a genuine issue of material fact.[121] This *Motion* should be granted because Plaintiff cannot demonstrate the existence of a triable, material factual issue and the Union is entitled to judgment as a matter of law.

**B.     Plaintiff Cannot Demonstrate the Existence of a Triable, Material Factual Issue and the Union is Entitled to Judgment as a Matter of Law.**

**(1)     The Secretary of Labor has Exclusive Jurisdiction over Plaintiff's Claims.**

Based on the plain meaning of the statute when looked at in its entirety, Title IV's subsections that deal with rights of Union members, not the rights of Union officers or employees. In the present case, it is clear that Plaintiff falls short of his required showing because any alleged injury regarding his eligibility to be nominated and the election is within the exclusive jurisdiction of the Secretary of Labor under the holding in *Calhoon v. Harvey*, 379 U.S. 134 (1964).

In *Calhoon v. Harvey*, the Court summarized the procedures of the Labor-Management Reporting and Disclosure Act (hereinafter "LMRDA") §401 (a)-(i) as follows:

"Title IV sets up a statutory scheme governing the election of union officers, fixing the terms during which they hold office, requiring that elections be by secret ballot, regulating the handling of campaign literature, requiring a reasonable opportunity for the nomination of candidates, authorizing unions to fix 'reasonable qualifications uniformly imposed' for candidates, and attempting to guarantee fair union elections in which all the members are allowed to participate."[122]

Plaintiff's Title I claims are really Title IV claims, and only the Secretary of Labor is authorized to pursue said claims.[123] The gravamen of Plaintiff's claims regarding his ineligibility to

---

[120]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); also see *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986): test is whether a fair minded jury could return a verdict for the plaintiff on the evidence presented..

[121]*Celotex*, at 324.

[122]*Calhoon v. Harvey*, 379 U.S. 134, 140 (1964) (quoting LMRDA 401(e), 29 U.S.C. 481(e)).

[123]29 U.S.C. §481(b).

be on the ballot because he was suspended for a positive drug test focus on whether he was subject to a charge under 29 U.S.C. §411(a)(5) when that eligibility determination was made that would provide him with the due process protections of the LMRDA. The gravamen of Plaintiff's claims regarding his removal from office is that he did not receive due process under 29 U.S.C. §411(a)(5).

Therefore, even if Plaintiff's allegations are considered to be true for purposes of this *Motion*, these allegations amount to a Title IV claim, enforcement of which is in the exclusive jurisdiction of the Secretary of Labor.[124] What Plaintiff is essentially attempting to do is to make a LMRDA Title IV case into a LMRDA Title I case, which is impermissible.[125] Plaintiff does this in order to get around the exhaustion and other procedural requirements of Title IV of the LMRDA, and because only the Secretary of Labor can bring an action for a violation of Title IV of the LMRDA. Clearly, claims regarding the election of officers, such as Plaintiff's claims in the case at bar, can only be raised under Title IV of the LMRDA and then only be pursued by the Secretary of Labor.[126]

In that regard, the Court in *Harrington v. Chao*, 372 F.3d 52 (1st Cir. 2004) elaborated on how only the Secretary of Labor had the authority to sue for violations of LMRDA Title IV:

> "To initiate the review process, aggrieved union members who have exhausted internal union remedies file a complaint with the Secretary. Id. § 482(a)...

---

[124]Plaintiff contends at <u>Doc. 1</u>, *Plaintiff's Complaint*, that pursuant to LMRDA Title I, §102 (29 U.S.C. §412) federal courts have jurisdiction for a suit for violation of §101(a)(1) of Title I of the LMRDA. 29 U.S.C. §412 provides, in part, that: "Any person whose rights secured by the provisions of this title...have been infringed by any violation of this title...may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate..."
   However, this argument is without merit. In *Calhoon*, supra, the Supreme Court held that "...we disagree with the Court of Appeals' holding that jurisdiction under §102 [of Title I] can be upheld by reliance in whole or in part on allegations which in substance charge a breach of Title IV rights." *Calhoon v. Harvey*, 379 U.S. 134, 138.

[125]*Pruitt v. United Brotherhood of Carpenters & Joiners*, 518 F. Supp. 61, 63 (N.D. Ga. 1981): "Although the plaintiff alleges that certain rights have been violated under Title I, these putative violations are all based on Pressley's eligibility to hold an elective office. It would be manifestly inappropriate and contrary to the statutory intent to allow mere allegations of Title I violations to confer jurisdiction there under when Title IV rights are essentially involved. (Citations omitted)...the allegations of plaintiffs' complaint in the case sub judice charge in substance a violation of Title IV rights. Accordingly, jurisdiction cannot be upheld under Title I."

[126]*BLE International Reform Committee v. Sytsma*, 802 F.2d 180, 183 (6th Cir. Ohio 1986).

At the same time that Congress was working to ensure effective union democracy, it was simultaneously taking steps to safeguard against excessive interference in the internal structure of unions. *Most notably, Congress limited the ability to sue for violations of Title IV to the Secretary.* See *Calhoon v. Harvey*, 379 U.S. 134, 140, 13 L. Ed. 2d 190, 85 S. Ct. 292 (1964). *Dissatisfied union members, as a result, are forced to proceed through the Secretary rather than the courts*. Congress believed that this requirement would not only curb the potential for excessive litigation, but also facilitate the resolution of labor disputes by promoting uniformity. S. Rep. No. 86-187, at 19 (1959), reprinted in 1959 U.S.C.C.A.N. 2318, 2338. (Italics added)."[127]

### (2)      Applicability of LMRDA 29 U.S.C. §529.

Plaintiff has failed to make a claim under 29 U.S.C. §529 because it is not a source of independent rights, but is an enforcement provision designed to effectuate rights conferred in other sections of the LMRDA.[128] Additionally, 29 U.S.C. §529 only protects union membership rights, not union officers, against unlawful imposition of discipline.[129] In this case, Plaintiff was removed from office as a result of dishonest conduct unbecoming of an Union Officer which was detrimental to the welfare of the Union and his union membership rights have not been abridged.[130]

### (3)      Applicability of LMRDA 29 U.S.C. §411(A)(1).

29 U.S.C. §411(A)(1) provides in its entirety, that:

"Equal rights. Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws."

Notably, there is no authority whatsoever in support of Plaintiff's reliance on 29 U.S.C.

---

[127]*Harrington v. Chao*, 372 F.3d 52, 55 (1st Cir. Mass. 2004).

[128]*Grand Lodge of International Asso. of Machinists v. King*, 335 F.2d 340, 345 (9th Cir. Cal. 1964).

[129]*Laborers' Dist. Council v Laborers' Int'l Union* (2004, DC Dist Col) 306 F Supp 2d 22; *Collins v Pennsylvania Tel. Union, etc.* (1976, WD Pa) 418 F Supp 50; *Sheridan v United Brotherhood of Carpenters & Joiners* (1962, CA3 Del) 306 F2d 152: 29 U.S.C. §529 did not afford remedy to business agent of union who had been removed from elected office prior to expiration of term by vote of membership of union.

[130]*Helmer v Briody*, 759 F Supp 170 (1991, SD NY).

§411(A)(1), which does not create, as Plaintiff contends, a substantive right to elected office; but, rather, only prohibits the unequal treatment of union members with respect to their voting rights. In other words, 29 U.S.C. §411(A)(1) would prohibit a labor organization from permitting members to vote in an election but deny that right to others, "subject to reasonable rules and regulations..."[131]

As the Second Circuit has stated:

"Section 101(a)(1) prohibits 'the unequal treatment of union members with respect to their voting rights' and 'thereby curbs no abuse other than discrimination against some union members and in favor of others with respect to voting rights …. To be viable, a claim under § 101(a)(1) must therefore allege the denial of some privilege or right to vote which the union has granted to others.'"[132]

### (4) Applicability of LMRDA 29 U.S.C. §411(a)(2) and Retaliation.

In order to establish a prima facie case of retaliatory discharge or discipline in violation of the LMRDA, Plaintiff must establish that: (1) his conduct constituted an exercise of free speech protected by the LMRDA; (2) he was subjected to an adverse action; and (3) the adverse action was causally connected to the exercise of protected free speech.[133] Plaintiff cannot show that he engaged in speech protected by the LMRDA and that this exercise was causally related to his removal.

Plaintiff claims that "[a]n investigation occurred into the financial matters of the President Willie Seymore involving the use of a Union credit card for personal use"[134] and that he "provided truthful information [and evidence] regarding the financial practices of President Willie Seymore."[135]

---

[131] 29 U.S.C. §411(A)(1).

[132] *Stojanov v. Rochester Tel. Workers Ass'n*, 257 F. Supp. 2d 584 (W.D.N.Y. 2003), citing *Members For a Better Union v. Bevona*, 152 F.3d 58, 63-65 (2d Cir. 1998)(emphasis in original).

[133] *Carroll v. Int'l Ass'n of Machinists & Aero. Workers*, 2006 U.S. Dist. LEXIS 95920, 10-14, at Fn. 1 (N.D. Ga. Mar. 15, 2006): "Some courts construe the Supreme Court's decision in *Sheet Metal Workers' Int'l Ass'n v. Lynn*, 488 U.S. 347, 109 S. Ct. 639, 102 L. Ed. 2d 700 (1989), to require that the adverse action be the 'direct result' of the protected speech." (Citations omitted).

[134] Doc. 1, *Complaint*, P.3, ¶10; and Doc. 13-1, *Amended Complaint*, P. 3, ¶10.

[135] Doc. 1, *Complaint*, P.3, ¶11; and Doc. 13-1, *Amended Complaint*, P. 3, ¶10.

Even assuming arguendo that his alleged speech was protected, causation is an essential element of Plaintiff's case, and he cannot point to any direct evidence or facts in the record which would support a finding of causation. Similar to the Title VII employment discrimination context, in the absence of direct evidence the required nexus between Plaintiff's alleged protected activities and the adverse action "may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision."[136] Thus, to show causation, Plaintiff must show that the Union membership who removed him from office were aware of his allegedly protected speech and further show a temporal proximity between the alleged protected speech and his removal.

In other words, Plaintiff must show that the adverse action (his removal from office) was the "direct result" of the allegedly protected speech. However, the record provides evidence of only one (1) reason for Plaintiff's removal, which does not relate at all to speech. That reason, as specified in the *September 28, 2012 District Determination* was that Plaintiff submitted a personal request for payment to the NAACP and received payment for services which he had already been compensated for by the Union. Elected officers of the Union are directly accountable to the members who elected them, and in this case, it was the members who removed Plaintiff because his conduct was dishonest, detrimental to the welfare of the Union, and conduct unbecoming of an Union Officer.

The charge and investigation Plaintiff refers to involving the past Union President occurred in April, 2009.[137] Additionally, in regard to temporal proximity, it is sufficient to defeat a reasonable inference of causation in this case where approximately four (4) years passed between the alleged

---

[136]*Casumpang v. ILWU, Local 142*, 269 F.3d 1042, 1059 (9th Cir. 2001): analogizing causation under LMRDA to Title VII. (citations omitted).

[137]**Ex. "6"**, *Dep. of Gregory Eady*, Ex. "6": *April 7, 2009 Charge Against Past Union President.*

speech in question and Plaintiff's removal from office.[138] Plaintiff cannot present any direct evidence of retaliation and no reasonable finder of fact could infer a causal connection between the alleged protected activity and the adverse action. Therefore, Plaintiff cannot demonstrate the existence of a triable, material factual issue and the Union is entitled to judgment as a matter of law.

### (5)   Applicability of 29 U.S.C. §411(a)(5) to Plaintiff's Ineligibility as a Result of His Positive Drug Test for Cocaine.

#### (a)   Plaintiff Is Ineligible under *ILA International Constitution and By-Laws*, Article XIII, Sec. 3.

The *ILA Local 1414 Constitution and By-Laws* may not be inconsistent with the provisions of the *ILA International Constitution and By-Laws*,[139] which require that:

> *Article XIII, Sec. 3.* "Section 3.Subject to such other reasonable eligibility requirements as a local union may impose, no person shall be eligible for office in any local union or as a delegate to the District Council or to the governing body of a district unless he has been: (a) a member in good standing of such local union for at least one (1) year preceding the date of his nomination, and (b) working, or seeking work, at the trade or craft covered by such local unions for at least one (1) year preceding the date of his nomination or employed by the I.L.A. or any of its subdivisions for such year..."[140]

Plaintiff nominated himself to be a potential nominee for Union office during the nominations on November 11, 2013. The election was conducted under *ILA Local 1414 Constitution and By-Laws*, and was a general election overseen by the District Union under *Sections 1 through 3*. Therefore, the District Union investigated all potential nominees and as a result, Plaintiff was declared ineligible to be a nominee. The District Union informed Plaintiff of his ineligibility to be nominated via correspondence dated November 19, 2013 as follows:

---

[138]*Higdon v. Jackson*, 393 F.3d 1211, 1220-21 (11th Cir. 2004): holding three-month period between protected expression and adverse action insufficient to establish temporal proximity.

[139]**Ex. "1"**, *Aff. of Willie J. Seymore*, P. 2, ¶ 5, <u>Att. "B"</u>: *ILA International Constitution and Bylaws*; P. 21-22, *Article XII, Local Unions, Section 5*. "Each local union must adopt by-laws...which shall not be inconsistent with the provisions of this Constitution or the Constitution of its district, and with the law; and...In the event of a conflict between the by-laws of a local union and the provisions of this Constitution...then such Local By-Laws shall be null and void to the extent only of such conflict with the foregoing documents or the applicable law..."

[140]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.2, ¶5, <u>Att. "B"</u>: *ILA Intl. Const. & Bylaws*; P.43-44, *Art. XIX, §3*.

"Local 1414's records have been reviewed and you have been a subject of pre-election investigations, and it has been determined that you have not met the necessary candidate eligibility requirements because you were suspended from the industry for a positive drug test during the period October 14, 2012 through November 21, 2012, and, therefore, were not working at the trade as required under the Constitution and Rules of Order of the International Longshoremen's Association, AFL-CIO prior to the nomination meeting as required by Article XIII, Section 3. Additionally, as a result of your removal from office under Article XII, Rule 2 of the Local 1414 Constitution and Bylaws, you are ineligible to hold any office in the Union at this time. Therefore, your name will not appear on the ballot."[141]

Following Plaintiff's drug suspension, Plaintiff did not complete all of the requirements for reinstatement until November 21, 2012.[142] Because this date falls less than a year from the date the *ILA Local 1414 Constitution and By-Laws* require nominations to be made (November 11, 2013), Plaintiff was ineligible to be nominated because he was not a member be in good standing and also working, or seeking work, at the trade or craft for at least one (1) year preceding the date of nomination.

> **(i)      Whether Plaintiff is Able to Maintain his Seniority Under the *Seniority Agreement* Between the GSA and the Union Has No Bearing on Whether he is Eligible to be Nominated.**

Plaintiff argues that he is eligible to run for Union office because he allegedly maintained his seniority under the *Savannah Longshoremen's Seniority Plan Between Georgia Stevedore Association and ILA Local 1414* (hereinafter referred to as the "*Seniority Agreement*") by working "700 hours in the year preceding the election..."[143] Whether or not this factual assertion is true has absolutely no bearing on Plaintiff's eligibility to run for office under the *ILA Local 1414 Constitution and* Bylaws; and the *ILA International Constitution and Bylaws*. By its very terms, the *Seniority Agreement* is

---

[141]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.66, L.20 thru P.67, L.8; attached thereto as Ex. "Q", *2013-11-19, Ltr from W. Rowell Stating not Eligible for Officer Elections*.

[142]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.3, ¶¶9-10, Att. "H": *November 16, 2012 Facsimile from GSA to the Union*; Att. "I": *November 21, 2012 Facsimile from GSA to the Union*.

[143]Doc. 16-1, *Second Amended Complaint*, P. 4, ¶18.

between the GSA and the Union and does not govern the internal affairs of the Union.[144] The *Seniority Agreement* only governs the seniority classification of longshoremen under the *Collective Bargaining Agreement* and nothing else as evidenced by the language "[a]s used in this Agreement..."[145]

The interpretation to be placed on the *ILA Local 1414 Constitution and Bylaws* and the *ILA International Constitution and Bylaws* is exclusively the Union's pursuant to its right to conduct its own internal affairs.[146] Even applying Plaintiff's interpretation, Plaintiff would be ineligible under the *Seniority Agreement*, as Paragraph 4-A states that: "*In determining the qualification, the following rules shall apply: b. Employees may receive credit for allowable breaks in service which are due to: 1. Injury or illness (other than through alcohol or drugs)...*"[147] Therefore, although not relevant, even under the *Seniority Agreement*, being suspended because of drugs is not an allowable break in service.

> **(ii)     Applicability of 29 U.S.C. §411(A)(5) to Plaintiff's Ineligibility as a Result of his Drug Suspension Is Not an Independent Charge Subject to the Due Process Rights of 29 U.S.C. §411(a)(5), but Is a Collateral Consequence of His Violation of the *Policy on Drugs*.**

Even assuming, arguendo, that 29 U.S.C. §411(A)(5) is applicable to Plaintiff's allegations regarding his ineligibility for nomination, Plaintiff was provided due process under his drug charge.[148] Individual longshoremen have the panoply of grievance procedures and other due process rights under the *CBA* to contest any positive drug test that they feel is unfair or inaccurate under the *Policy on*

---

[144]<u>Doc. 18-1</u>, *Seniority Agreement*, P. 81 (of *Seniority Agreement*) and P. 42 of <u>Doc. 18-1</u>.

[145]<u>Doc. 18-1</u>, *Seniority Agreement*, P. 81 (of *Seniority Agreement*) and P. 42 of <u>Doc. 18-1</u>.

[146]*Wirtz v. Hotel, Motel & Club Employees Union*, 391 U.S. 492, 496 (U.S. 1968).

[147]<u>Doc. 18-1</u>, *Seniority Agreement*, P. 85 (of *Seniority Agreement*) and P. 44 of <u>Doc. 18-1</u>.

[148]**Ex. "3"**, *Aff. of Dee Griffin*, P.1, ¶2, <u>Att. "A"</u>, *Policy on Drugs*, P.41, *Grievance Procedure*.

*Drugs*.[149] Plaintiff did not dispute the positive drug test results under the grievance procedures.[150] Plaintiff admits he violated the *Policy on Drugs*.[151] The time for Plaintiff to contest the drug suspension was when he was informed of the positive test. Plaintiff's ineligibility to be nominated for office now is a collateral consequence of his drug use and suspension for drugs and not discipline as he contends.

**(6)     Applicability of 29 U.S.C. §411(a)(5) to Plaintiff's Ineligibility as a Result of his Removal From Office.**

**(a)     Plaintiff Is Ineligible under *ILA Local 1414 Constitution and By-Laws*, Article XII, Rule 2.**

Plaintiff is ineligible to be nominated for Union office under *ILA Local 1414 Constitution and By-Laws*, Article XII, Rule 2. The relevant provision of that *Rule* requires that:

> "All Officers shall be subject to fines, removal, or expulsion from office who is found guilty of dishonesty, conduct unbecoming of an Officer, or conduct detrimental to the welfare of Local 1414. An Officer so removed...shall not be eligible to hold any office in the Union for a period of five (5) years following their removal or expulsion."

Plaintiff's ineligibility under this *Rule* is a consequence of his removal from office for a violation of Article XII, Rule 2 by membership vote on June 11, 2012 and the membership's subsequent affirmance of said removal through membership vote on November 12, 2012. According to said *Rule*, Plaintiff, as an Officer so removed, shall not be eligible to hold any office in the Union for a period of five (5) years following his removal.

Under 29 U.S.C. §411(A)(5), certain procedural safeguards are provided to Union members when they are fined, suspended, expelled, or otherwise disciplined, which include: (1) service of written specific charges; (2) a reasonable time to prepare his defense; and (3) a full and fair hearing.

---

[149]**Ex. "3"**, *Aff. of Dee Griffin*, P.1, ¶2, attached thereto as Att. "A", *Policy on Drugs* contained in the *CBA*, P.41, *Grievance Procedure*.

[150]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.3, ¶9.

[151]<u>Doc. 18-6</u>, *Declaration of Michael Jenks*, P. 2, ¶4.

Courts have uniformly agreed that the procedural safeguards of 29 U.S.C. §411(A)(5) apply only to Union members in regard to their membership status, and do not extend to officers who have been removed from office.[152] Even assuming, arguendo, that 29 U.S.C. §411(A)(5) is applicable to Plaintiff's allegations regarding his removal from office, Plaintiff was provided due process.

In regard to his claim that a violation of 29 U.S.C. §411(A)(5) has occurred, Plaintiff alleges that: (1) the motion to remove Plaintiff at the membership meeting was not presented to the Union Executive Board before being voted upon by the membership;[153] (2) Plaintiff did not have written notice that he was to be removed from office for any alleged malfeasance;[154] and (3) there was no written charge presented to Plaintiff in support of the motion to remove him from office.[155]

>    **(i)    Action of the Membership at a Meeting Is Not Required to Be Presented to and Approved by the Executive Board**.

The action of the membership does not have to be approved by the Union Executive Board. The function of the Union Executive Board, according to the *ILA Local 1414 Constitution and By-Laws, Article VII, Duties and Powers of Officers, Section 11(a)* is that:

---

[152] *Caterina v. The International Brotherhood of Painters & Allied Trades, Local Union No. 30*, 1978 U.S. Dist. LEXIS 16351 (S.D. Ga. 1978): "The courts have recognized the distinction made between the rights of members of a union and rights of officers. 'It is the union-member relationship, not the union-officer or union-employee relationship, that is protected.' The safeguards against improper disciplining of members of a union contained in Section 411(a)(5) do not extend to reinstatement of an officer who has been removed from office. In Miller v. Holden, 535 F.2d 912...the Fifth Circuit held that being removed from office is not being 'otherwise disciplined' in the intendment of the statute. '[It] has been held with virtual unanimity that section 101(a)(5) does not apply to removal or suspension from union office.' The Act does not apply 'to removal or suspension, even when done summarily, from union office unless union membership rights are involved.' It has 'nothing to do with the removal of officers, regardless of the nonregularity of their removal.' Clearly the due process protections of LMRDA do not extend to officers who are removed from office." (Citations omitted); *Gabauer v. Woodcock*, 520 F.2d 1084 (8th Cir. 1975); *Wood v. Dennis*, 489 F.2d 849 (7th Cir. 1973); *Grand Lodge of International Association of Machinists v. King*, 335 F.2d 340, 342, 56 LRRM 2639 (9th Cir.); *Air Line Stewards v. Transport Workers Union of America*, 334 F.2d 805 (7th Cir.); *Sheridan v. United Brotherhood of Carpenters and Joiners of America, Local No. 626*, 306 F.2d 152, 157 (3rd Cir.); *Martire v. Laborers' Local Union 1058*, 410 F.2d 32, 70 LRRM 3378 (3rd Cir.); *Lux v. Blackman*, 546 F.2d 713, 716 (7th Cir.); *Miller v. Holden*, 535 F.2d 912 (5th Cir.); and *Nelms v. United Association of Journeymen and Apprentices of Plumbing and Pipe Fitting Industry of United States and Canada*, 405 F.2d 715, 717 (5th Cir.).

[153] Doc. 13-1, *Plaintiff's First Amended Complaint*, P.5, ¶28.

[154] Doc. 13-1, *Plaintiff's First Amended Complaint*, P.5, ¶29.

[155] Doc. 13-1, *Plaintiff's First Amended Complaint*, P.5, ¶30.

"The Executive Board is the highest governing authority within the Local Union *between membership meetings*..."[156]

The highest governing authority within the Union is the membership, which has the power to decide all questions before it.[157] Therefore, the action of the membership did not have to be approved.

### (ii)   Plaintiff Was Served with Written Specific Charges; Prepared His Defense; and Had a Full and Fair Hearing Prior to Removal.

Plaintiff was served the *April 9, 2012 Grievance* on April 12, 2012, well in advance of the April 24, 2012 hearing.[158] Whether a union member has been granted a full and fair hearing depends on a number of potential factors, such as the accused's ability to challenge evidence; call witnesses; and whether the tribunal's decision as to guilt of the accused is based on some evidence.

In this case, the material facts are not in dispute. The evidence adduced at the hearing showed that the Plaintiff was entrusted with overseeing the leasing of the Union's multi-purpose room and was being paid by the Union for work associated therewith.[159] Plaintiff submitted an invoice requesting payment from a third party who rented the room from the Union.[160] Plaintiff was personally paid by the third party with a check for this invoice and personally cashed the check.[161] The only issue in this regard is what happened to the money after Plaintiff cashed the check from the third party. Plaintiff claimed that he paid the money to unknown members of the Union, although there was no creditble

---

[156]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.1, ¶4, <u>Att. "A"</u>: *ILA Local 1414 Constitution and Bylaws*, P.15-16, *Article VII, Duties and Powers of Officers, Section 11(a)* (Emphasis added).

[157]**Ex. "4(A)"**, *Depo. of Timothy Mackey*, P.67-68, L.12-25; and L.1-2; and **Ex. "1(A)"**, *Depo. of Willie J. Seymore*, P.32, L. 1-16; and P.63, L.14-22.

[158]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.23, L.6-25; P. 25, L.8-16; attached thereto as <u>Ex. "F"</u>, *2012-04-12, Acknowledgment of Service for violation of Art. XII, R.2 of Constitution and Bylaws of ILA Local 1414*; **Ex. "4"**, *Aff. of Timothy Mackey*, P.1-2, ¶4, <u>Att. "C"</u>: *April 9, 2012 Charge for Violation of Article XII, Rule 2*.

[159]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.3, ¶11; P.5, ¶18, <u>Att. "N"</u>: *September 28, 2012 District Determination*.

[160]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.3, ¶11; P.5, ¶18, <u>Att. "N"</u>: *September 28, 2012 District Determination*.

[161]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.3, ¶11; P.5, ¶18, <u>Att. "N"</u>: *September 28, 2012 District Determination*.

evidence to this effect and Plaintiff could not identify any of the individuals.[162] Plaintiff called witnesses, but none of the witnesses could identify the individuals who were allegedly paid the money.[163] Plaintiff submitted documentation both at the hearing and after the hearing.[164] Plaintiff presented testimony at the hearing.[165] The Union Executive Board reviewed all of the evidence, and found that the evidence presented supported finding Plaintiff guilty of conduct that was "dishonest, detrimental to the welfare of Local 1414 Union, and/or conduct unbecoming of an Union Officer".[166] The degree of punishment for said violation was turned over to the membership, which voted to remove Plaintiff from office.[167] Plaintiff appealed his removal to the District Union on July 5, 2012.[168]

      (iii)    **The August 7, 2012 De Novo Appeal Independently Met the Due Process Standards of 29 U.S.C. §411(A)(5).**

The District Union appointed a committee, which conducted a trial de novo that independently

---

[162]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.3, ¶11; P.5, ¶18, Att. "N": *September 28, 2012 District Determination*.

[163]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.3, ¶11; P.5, ¶18, Att. "N": *September 28, 2012 District Determination*.

[164]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.46, L.20 thru P.47, L.23.

[165]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.3, ¶11; P.5, ¶18, Att. "N": *September 28, 2012 District Determination*; **Ex. "4(A)"**, *Depo of Timothy Mackey*, P.35, L.11 thru P.40, L.9; and **Ex. "4"**, *Aff. of Timothy Mackey*, P.2, ¶5, Att. "E": *April 24, 2012 Exec. Bd. Meeting Minutes*; P.2, ¶6, Att. "F": *May 12, 2012 Regular Meeting Minutes*.

[166]**Ex. "1(A)"**, *Depo. of Willie J. Seymore*, P.32, L. 1-16; P.63, L.14-22; and P. 64-65; L.7-25 and L.1-16: "[A]ll recommendations got to come to the membership...From any board. The membership got the last approval on -- anything coming through this union hall the membership got the last word. And that's been the practice of this union for my 37 years of being here."; **Ex. "4"**, *Aff. of Timothy Mackey*, P.2, ¶5-7, Att. "E": *April 24, 2012 Exec. Bd Meeting Minutes*; Att. "F": *May 14, 2012 Reg. Meeting Minutes*; Att. "G": *May 28, 2012 Reg. Meeting Minutes*; Att. "H", *June 11, 2012 Regular Meeting Minutes*; and **Ex. "4(A)"**, *Depo of Timothy Mackey*, P.35, L.11 thru P.40, L.9.

[167]**Ex. "1(A)"**, *Depo. of Willie J. Seymore*, P.32, L. 1-16; P.63, L.14-22; and P. 64-65; L.7-25 and L.1-16;**Ex. "4"**, *Aff. of Timothy Mackey*, P.2, ¶5-7, Att. "E": *April 24, 2012 Executive Board Meeting Minutes*; Att. "F": *May 14, 2012 Regular Meeting Minutes*; Att. "G": *May 28, 2012 Regular Meeting Minutes*; Att. "H", *June 11, 2012 Regular Meeting Minutes*; and **Ex. "4(A)"**, *Depo of Timothy Mackey*, P.35, L.11 thru P.40, L.9.

[168]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.35, L.22 thru P.41, L.1; attached thereto as Ex. "A", attached thereto as *2012-07-05, Ltr from Jenks to Secretary Dickens requesting Appeal* (Ex. "A", P.18-19 of 28); **Ex. "1"**, *Aff. of Willie J. Seymore*, P.4, ¶14, Att. "L": *July 5, 2012 Jenks Appeal to the District Union*.

met the due process standards of 29 U.S.C. §411(A)(5).[169] Therefore, even if what Plaintiff claims is true, following the de novo District Union hearing and remand, the Union cured any procedural defects in putting Plaintiff on notice that he was facing a removal vote. Plaintiff was provided several written notices that the membership would be voting on the issue of his removal from office. First, the *September 28, 2012 District Determination* outlined its recommendation, which included that:

> "the action of the general membership at the June 11, 2012 meeting be redone. The general membership to have another opportunity to vote on the motion whether Michael Jenks should be removed from his office at Local 1414, upon proper notice, either by a special called meeting or at a general membership meeting."[170]

Thereafter, Plaintiff was provided with written notice that a new vote would be held at the November 12, 2012 meeting. The *October 25, 2012 Notice* stated as follows:

> "RE-VOTE NOTIFICATION IN COMPLIANCE WITH THE RECOMMENDATION FROM THE SOUTH ATLANTIC & GULF COAST DISTRICT ON WHETHER MICHAEL JENKS WILL BE REMOVED FROM OFFICE. A VOTE WILL BE TAKEN ON MONDAY, NOVEMBER 12, 2012 DURING OUR REGULAR MEMBERSHIP MEETING. ALL ACTIVE MEMBER IN ATTENDANCE IN GOOD-STANDING ARE ELIGIBLE TO VOTE."[171]

Here, the removal of Plaintiff was in response to the membership's expressed demands at the June 11, 2012 membership meeting, and again at the November 12, 2012 membership meeting, following remand and after Plaintiff was put on notice that there would be a vote to remove him from office. Therefore, in keeping with important public policy, "the courts are not to interfere" in the absence of a "showing of grievous unfairness."[172] A rule that a union officer cannot be removed from office following written notice of a vote to remove him from office would lead to absurd results.

---

[169]*Myers v. Affiliated Property Craftsmen*, 667 F.2d 817, 820 (9th Cir. 1982).

[170]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.5, ¶18, Att. "N": *September 28, 2012 District Determination*; Att. "O": *October 15, 2012 Correspondence Attaching the September 28, 2012 District Determination*; **Ex. "2(A)"**, *Depo. of Wilbert Rowell*, P.29, L.12 thru P.31, L.12; and **Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.60, L.9-12; P.48, L.2-11.

[171]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.5, ¶19, Att. "P": *October 25, 2012 notice Regarding District Order and Re-vote*; **Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.61, L.16 thru P.62, L.14.

[172]*Ritz v. O'Donnell*, 566 F.2d 731, 739 (D.C. Cir.).

**(7)      Defendant Union Did Not Breach its Duty of Fair Representation.**

A "union . . . can be held to represent employees unfairly only in regard to those matters as to which it represents them at all -- namely, 'rates of pay, wages, hours . . ., or other conditions of employment.'"[173] Here, the undisputed facts fail to demonstrate such conduct on the part of Defendant Union and Plaintiff has failed to adequately plead a breach of the duty of fair representation.

Plaintiff alleges in his *Complaint* that Defendant has breached its duty of fair representation to him[174] based on the Union's alleged refusal to process his grievance and his resignation.[175] However, the duty of fair representation extends only to matters involving an employee's dealings with his employer and does not affect Plaintiff's relationship with the Union.[176]

It is an accepted proposition of law that the Court "is bound to accept the interpretation placed on the Constitution by the [Union] if it is fair and reasonable."[177] This is so because, as the Supreme Court has noted, when Congress attempted to secure the public's interest in democratic principles through the enactment of the LMRDA, it balanced the need to enforce those principles against a union's right to conduct its own internal affairs.[178] Here, the Union has conformed to democratic principles and the Court should not interfere with internal union affairs.

**(a)      Alleged Refusal to Process Plaintiff's Grievance.**

On February 27, 2012, Plaintiff wrote a charge against the past Union President, which was

---

[173]*International Brotherhood of Teamsters, Local No. 310 v. NLRB*, 190 U.S. App. D.C. 279, 587 F.2d 1176, 1183 (D.C. Cir. 1978).

[174]*DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165 (U.S. 1983); and *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570 (U.S. 1976).

[175]Doc. 1, P. 10, ¶68.

[176]*Bass v. International Brotherhood of Boilermakers*, 630 F.2d 1058 (5th Cir. 1980).

[177]*Local 317 v. Nat. Post Office Mail Handlers*, 696 F.2d 1300, 1302 (11th Cir. 1983).

[178]*Wirtz v. Hotel, Motel & Club Employees Union*, 391 U.S. 492, 496 (U.S. 1968).

based on Article XII, Rule 2 and Article XII, Rule 11 of the *ILA Local 1414 Constitution and By-Laws*.[179] At the April 12, 2012 Executive Board meeting, Plaintiff voluntarily dropped his February 27, 2012 charges against the past Union President.[180] Therefore, the Union did not refuse to process Plaintiff's grievance. Additionally, when discussing the charge which was written against Plaintiff on October 24, 2012 based on his failed drug test (which was never heard), Plaintiff explained that the Executive Board is allowed to receive a charge and decide not to hear it.[181]

      **(b)**      **Alleged Refusal to Accept Plaintiff's Resignation.**

During the time that the Plaintiff's case was pending after being remanded from the District Union to the Union membership for a vote, Plaintiff attempted to resign from his position as chairman of the board of directors (not the board of directors itself) and from the office of alternate trustee.

Plaintiff's attempted resignation failed for two (2) reasons. First, Plaintiff was removed from office pursuant to a membership vote on June 11, 2012.[182] *Article XIX, Section 4* of the *ILA International Constitution and Bylaws* provides that "[a]n appeal taken under this Article shall not operate to stay the action or decision appealed from unless the body to which the appeal is taken shall

---

[179]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.19-20, L.6-25 and L.1-25; attached thereto as Ex. "D", *2012-02-27, Ltr from Jenks to Board re Emergency Executive Board Meeting on 02/15/12*.

[180]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.24-25, L.19-25 and L.1-7; attached thereto as Ex. "G", *2012-04-12, Jenks Dismissal of Charges against Seymore*; **Ex. "4"**, *Aff. of Timothy Mackey*, P. 2, ¶ 5, Att. "D": *April 12, 2012 Executive Board Meeting Minutes*.

[181]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.51, L.16 thru P.53, L.14; attached thereto as Ex. "I", *2012-10-24, Latreana Johnson Charge Against Jenks*: "Q. (By Mr. Herman) I've handed you what's been marked as Exhibit I. It appears to be a charge written against you dated October 24th, 2012, written by Latreana Johnson. A. Yes. Q. Have you seen this charge? A. Yes. Q. Okay. And was the charge heard? A. No. Q. Okay. Did you ever respond in writing to the charge? A. No. Q. Okay. So what are some of the reasons why a charge would not be heard if it was written against someone and submitted to the Union like this was? A. The board received this charge and the board decided not to hear it. Q. Okay. And they're allowed to do that? A. Yes. Q. The board is allowed to do that? A. Yes."

[182]**Ex. "4"**, *Aff. of Timothy Mackey*, P.2, ¶8, Att. "H": *June 11, 2012 Regular Meeting Minutes*; **Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.16, L.7-9; and P.33, L.22 thru P.34, L.23; attached thereto as Ex. "A", *2012-12-12, Jenks' Appeal to International and Supporting Documents Totaling Twenty-Eight (28) Pages (2012-10-15, Ltr from Fitzgerald to Seymore & Jenks attaching 09-28-12 District Determination*, P.20-23 of 28)); and **Ex. "1(A)"**, *Depo. of Willie J. Seymore*, P. 64-65; L.7-25 and L.1-16.

so order."[183] In this case, there was no such order and Plaintiff did not request a stay from the District Union of his removal.[184] Therefore, Plaintiff did not have an office to resign from on October 22, 2012.

Second, because the issue regarding Plaintiff's removal from office was pending and had already been referred to the membership for a vote, the Union had no obligation to accept Plaintiff's resignation, and allow Plaintiff an easily accessible escape hatch that would permit him to elude the will of the membership as was expressed in the democratically governed membership vote.

## IV.    **Conclusion.**

For all of the reasons set forth herein the Union's *Motion* should be granted and Plaintiff's claims against the Union should be dismissed with prejudice. The Union has a legitimate interest in limiting a member who has been suspended from the industry as a result of a positive drug test for cocaine while he was on the job working from running for Union office.[185] Likewise, the Union has a legitimate interest in limiting a Union officer from running for office who has been convicted of dishonest conduct unbecoming of an Union Officer which was detrimental to the welfare of the Union while he was an officer. Hence, a determination by the District Union that Plaintiff is ineligible cannot be said to be unfair and unreasonable. On the contrary, such a result would seem to be responsive to the membership's expressed demands at the June 11, 2012 membership meeting, and again at the November 12, 2012 membership meeting, that Plaintiff be removed from office and this Court should accept such an interpretation of the *Constitution and Bylaws* because such an interpretation would not impede democracy but would strengthen it.[186] At the heart of democracy is the right of a majority to

---

[183]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.2, ¶5, Att. "B": *ILA Intl. Const. & Bylaws*; P. 44, *Art. XIX, §4.*

[184]**Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.16-17, L.23-25 and L.1-11; attached thereto as Ex. "A", *2012-12-12, Jenks' Appeal to International and Supporting Documents Totaling Twenty-Eight (28) Pages.*

[185]*Finnegan v. Leu*, 456 U.S. 431, 441 (U.S. 1982).

[186]29 C.F.R. 452.35 (1992). The Regulation states in part: "Qualifications for candidacy. It is recognized that labor organizations may have a legitimate institutional interest in prescribing minimum standards for candidacy and office-holding in the organization. On the other hand, a dominant purpose of the Act is to ensure the right of

have its mandate effected by its elected leaders. This autonomy of the union membership to choose, wisely or not, through democratic elections is the policy commitment of the LMRDA. In applying these principles to this case, we ask this Court to recognize that Plaintiff was removed by a direct membership vote, not once, but again after his appeal and after notice was posted on October 25, 2012 that the membership re-vote regarding his removal would occur on November 12, 2012.

A decision in Plaintiff's favor in this case would reinstate a union member to office who was using his office to personally benefit himself to the detriment of the Union and who admittedly had drugs in his system while attempting to work under the *CBA* unreasonably endangering his fellow union members. Public policy should not operate to impose upon the Union a leader who has been removed and rejected through a democratically held election after proper notice. The Union demonstrated through the presentation of affirmative evidence that Plaintiff will be unable to prove his case. This Court should grant the *Union's Motion for Summary Judgment* upon the firm foundation of the case's uncontroverted facts and the rationales of *Celotex*[187] and *Anderson.*[188]

Respectfully submitted this 14th day of March, 2014.

**BIGNAULT & CARTER**
**BY S/CHARLES S. HERMAN**
**GA BAR #142852**
**BIGNAULT & CARTER**
**PARK SOUTH - UNIT F9**
**7505 WATERS AVENUE**
**SAVANNAH, GEORGIA 31406**
**TELEPHONE:  (912) 356-0388**
**FACSIMILE  : (912) 356-0399**
**EMAIL: ATTYHERMAN@COMCAST.NET**

---

members to participate fully in governing their union and to make its officers responsive to the members. A basic assumption underlying the concept of 'free and democratic elections,' is that voters will exercise common sense and good judgment in casting their ballots. In union elections as in political elections, the good judgment of the members in casting their votes should be the primary determinant of whether a candidate is qualified to hold office..."

[187]*Celotex,* 477 U.S. at 323.

[188]*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| **MICHAEL JENKS, SR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO.: 4:13-cv-00177-BAE-GRS** |
| | ) | |
| **INTERNATIONAL LONGSHOREMEN'S** | ) | |
| **ASSOCIATION LOCAL NUMBER 1414,** | ) | |
| **SAVANNAH, GEORGIA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## *CERTIFICATE OF SERVICE*

This is to certify that I have on this day served all the parties in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF") which was generated as a result of electronic filing.

This 14th day of March, 2014.

> **BIGNAULT & CARTER**
>
> **BY S/CHARLES S. HERMAN**
> **GA BAR #142852**
> **BIGNAULT & CARTER**
> **PARK SOUTH - UNIT F9**
> **7505 WATERS AVENUE**
> **SAVANNAH, GEORGIA 31406**
> **TELEPHONE:  (912) 356-0388**
> **FACSIMILE  : (912) 356-0399**
> **EMAIL: ATTYHERMAN@COMCAST.NET**