## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| MICHAEL JENKS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | CIVIL ACTION NO. |
| vs. | * | 4:13-CV-00177 |
| | * | |
| INTERNATIONAL LONGSHOREMAN | * | |
| ASSOCIATION, LOCAL 1414, SAVANNAH | * | |
| GEORGIA | * | |
| | * | |
| Defendant. | * | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Plaintiff, Michael Jenks who by and through counsel responds in opposition to Defendant, International Longshoreman's Association Local 1414's (hereinafter Defendant or "the Union") motion for summary judgment as follows:

### I.      BRIEF STATEMENT

This action is brought for violations of  and 29 U.S.C. § 411 (a)(5), Section 101(a)(5), 529; and Section 303 of the Labor Management Relations Act, 1947, 61 Stat. 158, 29 U.S.C. 187, N.L.R.A. § 8(b)(4) by Defendant International Longshoremen's Association Local 1414, Savannah Georgia (hereinafter "the Union").

The LMRDA does not afford the Plaintiff a substantive right to keep his elective office, it affords him a substantive right to participate in deliberations and discussions at union meetings as a member of the union. Further, as a union member he is entitled to due process before the Union acts to deprive him of the substantive right, as a member, to run for higher office. These substantive rights are at issue in the instant lawsuit.

1

## II.     FACTS

Plaintiff, Michael Jenks, Sr., a union member of Local 1414 held office as Chair of the Board of Directors of the Union pursuant to the Constitution and Bylaws of  International Longshoremen's Association, Local 1414 (hereinafter "the Bylaws"). Plaintiff has set forth the facts in dispute and omitted by the Defendant in his Statement of Facts in Dispute in opposition to the Defendant's Motion for Summary Judgment. Plaintiff incorporates his Statement of facts in dispute as if fully set forth herein.

## III.     ARGUMENT AND CITATION OF AUTHORITY

### A.     STANDARD ON SUMMARY JUDGMENT

Summary judgment is proper when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The movant carries the initial burden and must show the Court that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554 (1986). "Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991).

### B.     PLAINTIFF'S CLAIMS UNDER TITLE I

Title I of the Labor-Management Reporting and Disclosure Act of 1959 (LMDRA) provides a 'Bill of Rights' for labor union members, including various protections for members involved in union elections. *Local No. 82, Furniture and Piano Moving et. Al v. Crowly,* 467 U.S. 526, 104 S. Ct. 2557 (1984). "Title I is designed to guarantee every union member equal rights to vote and otherwise participate in union decisions, freedom from unreasonable restrictions on speech and assembly, and protection from improper discipline." *Id.* 467 U.S. at

536. Title IV protects many of the same rights as Title I, however the statutory scheme governs fixing the terms of office of union officers, the requirement of a secret ballot, the handling of campaign literature, nomination processes, qualifications of candidate and guaranteeing fair union elections in which all members are allowed to participate. *Id.* at 539.

"Title I of the LMRDA was specifically designed to protect the union member's right to seek higher office within the union." *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). The Union's authority to dismiss a member from office as part of a purposeful and deliberate attempt to suppress dissent within the union is limited under Title I. *Finnegan v. Leu*, 456 U.S. 431, 102 S. Ct. 1867, 72 L. Ed. 2d 239 (1982). Jurisdiction of this Court under Section 102 of Title I depends entirely upon whether the complaint showed a violation of rights guaranteed by s 101(a) (1), *Calhoon v. Harvey*, 379 U.S. 134, 138, 85 S. Ct. 292, 295, 13 L. Ed. 2d 190 (1964).

The most substantial difference between Title I and Title IV is in the remedies provided. (cit. omit.). *Calhoon v. Harvey*, 379 U.S. 134, 141-42, 85 S. Ct. 292, 297, 13 L. Ed. 2d 190 (1964). If a Title I right is at issue, the allegedly aggrieved union member has direct, virtually immediate recourse to a federal court to obtain an adjudication of his claim and an injunction if his complaint has merit. *Id*. Plaintiff has rights guaranteed under the LMRDA as a union member and as an elected, and not an appointed officer. Title I protects his rights as a union member in union meetings to participate in the business that the Union transacts.

C.  PLAINTIFF'S CLAIMS UNDER LMRDA 29 USC § 411(A)(1)

The Supreme Court has characterized the LMRDA as "the product of congressional concern with widespread abuses of power by union leadership." Finnegan v. Leu, 456 U.S. 431, 435, 102 S.Ct. 1867 1870, 72 L.Ed.2d 239 (1982). The "Bill of Rights" portion of that legislation

was "aimed at enlarged protection for members of unions paralleling certain rights guaranteed by the Federal Constitution." Id. at 435, 102 S.Ct. at 1870. Congress "recognized that democracy would be assured only if union members are free to discuss union policies and criticize the leadership without fear of reprisal.

### 1.     Plaintiff's Section 101(a)(5) Due Process Claim

Section 101(a)(5)'s purpose is to protect union members from improper discipline by ensuring that the standards of due process apply to union disciplinary proceedings. *Waring v. ILA Local 1414,* 1987 WL 149722 (S.D.Ga. 1987). The requirements of due process are (1) the service of written charges; (2) a reasonable time to prepare a defense; and (3) a full and fair hearing. *Id.*

The removal from elected office was extreme discipline which diminished his right as a union member to run for elective office for five years.   Plaintiff's expulsion has penalized him in a way which separates him from other members  otherwise in good standing- he cannot run for office for five years in violation of the LMRDA. *See Dolan v. Transp. Workers Union of Am.*, 746 F.2d 733, 743 (11th Cir. 1984), (where Union action prohibiting the Plaintiff from seeking reelection for a period of time directly affected her ability to speak as a member).

Plaintiff states a claim under the LMRDA if the direct infringement of his rights as a union member did not accord with reasonable union rules. *Id.* Traditional concepts of due process dictate what constitutes a full and fair hearing in union disciplinary proceedings. *Id.* The proper inquiry by a court is to determine whether the action complained of is inconsistent with the traditional concepts of due process of law. *Id.* "Due process is flexible and calls for such procedural protections as the particular situation demands in order to minimize the risk of error." *Id.*

4

Seymore set in motion a sequence of events that caused Mr. Jenks various deprivations of rights protected by the LMRDA over the course of the year 2012. The facts viewed in the light most favorable to the Plaintiff as the nonmoving party demonstrate that after Seymore observed Jenks voluntarily testifying against Seymore in the Federal investigation; and viewed Jenks as a challenger to his presidency. First, Seymore removed  Jenks' appointed duties managing  the Joe White room without substantiation of an alleged wrongdoing on the part of the Plaintiff prior to bringing the charge against Jenks with respect to his handling of the NAACP function.   Seymore then went on a fishing expedition and disparaged the Plaintiff's reputation for his efforts in assisting   the NAACP, despite members of the NAACP's efforts to demonstrate their support the Plaintiff.

2.       Discipline Under § 609

'Discipline' in section 609 refers to actions taken by the union that diminish the membership rights of a union member. *Guidry v. International Union of Operating Engineers, Local 406*, 882 F.2d 929 (C.A.5 (La.), 1989) vacated on other grounds, 494 U.S. 1022,110 S.Ct 1465 (1990), *cert. denied*, 498 U.S. 1016 (1990) *citing Miller v. Holden*, 535 F.2d 912 (5th Cir 1976).  "Union action which adversely affects a member is 'discipline' only when it (1) is undertaken under color of the union's right to control the member's conduct in order to protect the interests of the union or its membership, and (2) it directly penalizes him in a way which separates him from comparable members in good standing."  *Id.* Jenks' removal under the guise of Seymore's retaliatory charge alleging the Bylaw violation resulted in Plaintiff losing his right

5

to seek office for five years; an infringement of a right enjoyed by other members otherwise in good standing. Discipline under 411(a)(5)(2).

Due process under 29 U.S.C. § 411(a)(5) requires that a union member  be served with written specific charges; where, as here,  the Union charge makes reference to specific written provisions, 411 (a)(5) empowers federal courts to examine the provision and determine whether the union member had been misled or otherwise prejudiced in the presentation of his defense. *Waring v. International Longshoremen's Ass'n, Local 1414 of Savannah, GA* 653 F. Supp. 374, 378 (S. D. Ga. 1986). "Fair play entitles an accused to rely on the written charges made against him in preparing his defense, limits the trial to proof of that charge, and bars his being found guilty of an offense with which he is not charged. *Id.*

a)   Jenks was afforded due process on May 12, 2012

At the May 12, 2012 regular Union meeting the Board recommendation to fine Mr. Jenks $2500 for the charge brought against him by Mr. Seymore, was presented by motion to the membership. Again, in accordance with the established practice and procedure[1], Mr. Jenks was permitted to be heard. At this point, Seymore, the former president[2], relinquished the presiding gavel to Recording Secretary Timothy Mackey in order to weigh in on his charge against Mr. Jenks. Union member Alicia Blakely, attempted to make a substitute motion to expel and fine Mr. Jenks, but Mackey presiding as Chair, did not permit it. The vote presented to the membership was the original recommendation of the Board, to-wit to fine Mr. Jenks $2500. The membership rejected the recommendation by majority vote.

 It is undisputed that Plaintiff was afforded due process on this date. Mr. Jenks had notice of the Article XII, Rule 2 charge and had the opportunity to be heard on the punishment. "The

---

[1] *Id.*
[2] Willie Seymore was the president of the local 1414 until he lost his re-election attempt in December 2013.

opportunity to be heard is an essential requisite of due process of law in judicial proceedings."
*Walker v. R.J. Reynolds Tobacco Co.,* 734 F.3d 1278, 1288 (11th Cir. 2013). Although, the
Plaintiff disputes that he was guilty as charged, (and proffers evidence to the Court that
demonstrates that he did not "receive extra payment for services that he rendered for which he
had already been compensated"[3] by the Union) the membership vote rejecting the fine should
have been the end of the matter. However, the facts demonstrate that Seymore's action at the
next meeting, took the Union into "territory that was uncharted[sic]". (Dkt. #32-8 p. 89).

         *b)* <u>The Union Did Not Provide the Plaintiff Notice at
           at the June 2012 meeting</u>

   At the June 11, 2012 meeting, Mr. Seymore relinquished the president's gavel again and
brought up the matter of Ms. Blakely's attempted substitute motion at the previous meeting.
Seymore does not now remember what caused him to bring the motion back up at the next
meeting. (Dkt. #32-2 p. 60). According to Seymore, "if I bring something to the membership—if
I bring a paper to the membership and a member gets up on the floor and wants to make a
substitute motion to what is on that floor, we have always granted that to happen."

   Although a union's interpretation of its own bylaws and constitution is entitled to
deference, the court may apply its own interpretation  to vindicate the purpose of the Act, which
was to guard the rights of union members against abuse by union officials. *See In re Gopman,*
531 F.2d 262, 266 (5th Cir.1976); *Smith v. Local No. 25, Sheet Metal Workers Int'l Ass'n,* 500
F.2d 741, 750 (5th Cir.1974). The union's interpretation of its own documents will be respected
only to the extent it is fair and reasonable. *Dep't of Labor v. Aluminum, Brick & Glass Workers
Int'l Union, Local 200*, 941 F.2d 1172, 1177 (11th Cir. 1991).

---

[3] Defendant's brief Dkt #32 at p. 23.

Seymore interprets the Bylaws differently from the Plaintiff.   Both the Plaintiff and Seymore agree that the membership can reject the recommendation of the Executive board, which is charged by the Bylaws to hear the evidence. (Dkt. #32-2 p. 63). Both agree that the membership has the "final word." (Dkt. #32-2 p. 63). However, the two differ as to whether the Bylaws provide for any member have the ability to substitute the discipline recommended by the Board by substitute motion from the floor, without the charged member receiving prior written notice.

It is undisputed that the membership had the final authority to accept or reject the Board recommendation to fine Mr. Jenks in accordance with the Bylaws. After the adoption of the minutes, Mr. Jenks was within his right to make an appeal to the membership with respect any charge against him.[4] Mr. Seymore filed two charges against Mr. Jenks.  At the April 12, 2012 meeting, Mr. Jenks was unsuccessful in his effort to appeal to the membership to reject a  $250 fine recommended by Board for and  abusive language charge Seymore levied against him. However, Jenks successfully appealed to    the membership to reject the recommended $2500 fine on Seymore's second charge; until Seymore set aside the membership vote at the subsequent meeting.

Seymore changed the rules and did not permit anyone, including Mr. Jenks to make a substitute motion at the subsequent union meeting to reverse or reconsider the vote removing Jenks. (Dkt. #32-9 p. 68). Additionally,

        c.      <u>The Union Did Not Afford Jenks the Opportunity to Be Heard on November 12, 2012</u>

Seymore admits that an officer should be permitted to present evidence on his behalf at a membership meeting. *Id*. at 64.  Yet in the instant case, Mr. Jenks was not permitted to speak to

---

[4] See the Facts set forth for the April 12, 2012 membership meeting.

the membership prior to the November 2012 union meeting vote to expel him from office.

Seymore's interpretation of the Bylaws dictates that the membership can sua sponte remove an

officer at a membership meeting. *Id.*  Plaintiff disagrees. [Exhibit A (Jenks Affid. ¶8)]. It is

undisputed that the Union provided notice that a vote to remove Mr. Jenks was going to occur on

November 12, 2012.   However, Seymore did not follow the established procedure for

conducting the regular Union business meeting; and he did not call the vote to expel Mr. Jenks

pursuant to motion as directed by the District. Mr. Jenks was not given the opportunity to be

heard. Seymore did not permit any discussion or a substitute motion on November 12, 2012

when he directed the membership body to vote to remove the Plaintiff.  The inconsistent

application of the Union's procedures by past president Seymore is evidence of his personal

animosity against the Plaintiff.

This was the final  action in  the series of oppressive acts by Seymore in 2012 to suppress

the Plaintiff and other union members from speaking and conducting the business of the Union;

and which action resulted in preventing  Jenks from opposing him for election for five years in

violation of the LMRDA.  *See Helmer v. Briody*, 759 F. Supp. 170 (S.D.N.Y., 1991) (Second

Circuit Court of Appeals found a § 101(a)(2) of the LMRDA, 29 U.S.C. § violation(where the

challenged action was 'part of a series of oppressive acts by the union leadership that directly

threatened the freedom of members to speak out. In that unusual circumstance, 'clear and

convincing proof,' may demonstrate that 'relief under the LMRDA might be available").

Jenks availed himself of the administrative process, he appealed the November 12, 2012

election to the International Longshoreman Association, AFL-CIO which rendered a  final

decision on Mr. Jenks' Appeal. The International determined that "parliamentary and procedural

violations may have been committed" on November 12, 2012.  (Dkt. #32-9, p. 77). The decision

also recognized that Mr. Jenks did not have an opportunity to be heard. *Id.* The rosters of members present at each of the union meetings demonstrates that not all members who voted at the final election heard evidence as to Mr. Jenks' guilt or innocence. Yet, the International let the election and its results stand diminishing the Plaintiff's right to run for office.

> D.     THE UNION VIOLATED PLAINTIFF'S RIGHTS GUARANTEED UNDER SECTION 411

Plaintiff also sets forth a claim for retaliatory discipline because he engaged in protected speech, in violation of the LMRDA. The LMRDA includes a "Bill of Rights" of Members of Labor Organizations, 29 U.S.C. sec. 411 which guarantees include freedom of speech and assembly. In order to establish a case of retaliatory discipline, Plaintiff must establish (a) that his conduct constituted an exercise of free speech protected by the LMRDA; (2) he was subjected to an adverse action; and (3) the adverse action was casually connected to the exercise of protected free speech. *Knight v. International Longshoreman's Association,* 457 F.3d 331 (3ʳᵈ Cir. 2006).

> 1.  Plaintiff's Protected Speech

> > a.  The Scope of the Punishment Diminished Plaintiff's Member Speech

The Court must examine the scope of punishment of the Union's action removing him from office. To the extent that the Union interfered with the Plaintiff's speech as a member, §422 (a) is relevant regardless of the rationale for the punishment. *Dolan v. Transport Workers Union of America,* 746 F.2d 733, 743 (11ᵗʰ Cir. 1984). The removal from office did not necessarily deprive Mr. Jenks of a member speech right. *Id.* However, the punishment which results from being removed from office, diminishes Jenks' opportunity to seek reelection for a period of time and therefore directly affects his ability to speak as a member. *Id.* Members in good standing have the right to be nominated and to run for office in accordance with the Union

Bylaws. The Eleventh Circuit has determined that a member's speech takes on added meaning and significance in the context of a legitimate campaign for elective office. *Id.* The express terms of § 411(a)(2) permit the Plaintiff to state a claim for infringement of his speech as a candidate for elective office where the infringement of this speech does not accord with "reasonable union rules." *Id.* Whereas here, the deprivation purports to respond to Jenks' alleged violations in his capacity as an officer, the Union suppression of his speech (opportunity to run for future office for five years) must correspond in a practical way with the harm the Union seeks to assuage. *Id.*

In the instant case, the facts viewed in the light most favorable to the Plaintiff as the nonmoving party, demonstrate that the punishment to-wit the expulsion from office, did not correspond in a practical way to the alleged harm with which that Jenks was charged. The original motion of Blakely on June 11, 2012 was to "fine and remove" the responsibilities of the Plaintiff as Chair. The membership voted not to fine him. Assuming *arguendo,* that the Union had a reasonable goal of removing Mr. Jenks from the responsibility over the Joe White Room, and to relieve him of his responsibilities as Chair of the Board of Directors, the expulsion was an extreme solution addressing the alleged harm. The facts demonstrate that Seymore utilized his power to remove Jenks in his appointed duties to handle the Joe White Room in February 2012. Further, Plaintiff submitted letters of resignation for two positions in October 2012. The sole reason to vote to expel the plaintiff was to prevent him from being able to run for office for five years. Plaintiff submits that this action constitutes an unreasonable diminution of Plaintiff's member speech pursuant to *Dolan v. Transport Workers Union of America*, supra.

      b.   Plaintiff testified against Seymore in a Federal Investigation

Plaintiff submits that he engaged in protected speech when he testified against Seymore at a federal investigation at the Union Hall and at the Federal Grand Jury. Seymore was investigated for mis-use of the Union credit card. (Dkt. #32-2 p. 86). The charges were investigated by the Grand Jury. *Id.* at 86. The investigation can still be reinstated at the grand jury. *Id.* Federal investigators came to the Union Hall to question individual board members. [Exhibit A (Jenks Affid. ¶28)]. Seymore was present and observed some board members refuse to voluntarily talk to the investigators. *Id*. at ¶30. However, Seymore observed the Plaintiff voluntarily leave the boardroom to present testimony with respect to Mr. Seymore. *Id.* According to the Bylaws, Jenks as Chair of the Board had financial oversight of financial responsibilities of Chair of the Board. (Dkt. #32-2, Bylaws, sec. 6a. p. 14).

      c.   The Content of Plaintiff's Letters to the Union Membership

The content of Plaintiff's his letters to the membership dated February 27, 2012, June 22, 2012, and July 3, 2012 amount to  protected speech.  The letters set forth Plaintiff's criticism of the Seymore's arbitrary enforcement of the 24-hour rule as applied to the Plaintiff. Plaintiff attempted, but the Seymore thwarted his efforts to have the letters read to the membership regardless of whether they were filed in accordance with the 24-hour rule (in March, June and July 2012) or whether they were admittedly not in compliance with the 24-hour rule (February 2012, October 2012).  The letters alleged instances where Seymore treated the Plaintiff differently than others in applying the 24-hour rule in his attempts to communicate his concerns about Seymore to the membership.

i.   The Adverse Action

The arbitrary refusal to permit the Plaintiff to inform the membership of the former president's violations denied the Plaintiff his rights to participate in and to discuss Union business at meetings, the same rights as were available to other union members.  Plaintiff was denied the opportunity to participate and be heard on: (1) June 25, 2012, when he and other members were not permitted to address the membership and revisit the June 11, 2012 motion vote to remove him from his position as Chair[5]; (2) June 25, 2012 at the Union meeting;  and (3) July 6, 2012  when Seymore refused to permit the reading of Plaintiff's three letters dated June 22, 2012 and July 3, 2012, respectively.

### 3. The Adverse Action and the Protected Speech were Casually Related

In order to establish a causal connection, the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech. *Castle v. Appalachian Technical Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011).

The diminishing of Plaintiff's rights as a member to inform the Union membership of the alleged violations of former president Seymore were directly related to the protected speech. Seymore arbitrarily applied the 24 hour rule to prevent Jenks from disclosing information about Seymore to the membership.  Jenks had evidence that some members did not have to comply with the 24-hour rule which he addressed in his letters to the membership.  Seymore disregarded Plaintiff's rights as a union member to address the membership regardless of whether Plaintiff complied with the 24-hour rule or not. In the instant case, the evidence viewed in the light most favorable to the Plaintiff as the nonmoving party indicates that the Union's acts were intended to suppress dissent among the membership as a whole, and specifically as to the Plaintiff.

---

[5] The exact same procedure that Seymore had used on June 11, 2012, to set aside the May 28, 2012 vote in which the membership vindicated Mr. Jenks.

The letters dated June 22 and July 3, 2012 written by Michael Jenks were also protected speech. The letters noticed the membership that Seymore was not abiding by the 24-hour rule with respect to his letters. (Dkt. #32-9).  Mr. Jenks right to exercise speech afforded to other union members was diminished when Seymore prevented the letters from being read. Seymore's action denying Mr. Jenks the right to alert the membership to the former president's mis-conduct was protected. The adverse action was that the membership did not receive the information about Seymore's misconduct and Jenks' right as a union member to bring forth information to the general membership was diminished.  The failure to permit Mr. Jenks' information regarding Seymore was directly related to the  expression that Mr. Jenks sought to exercise as a union member.

(a) Jenks formally opposed Seymore and was a Threat

The facts viewed in the light most favorable to the Plaintiff as the nonmoving party, present sufficient evidence that at a finder of fact could conclude that Seymore had a personal vendetta and retaliated against the Plaintiff because Mr. Jenks voluntarily testified against him in a federal investigation of Seymore's mis-use of the Union credit card; and because Mr. Jenks was going to run against him in the December 2013 election.

The LMRDA was drafted as "the product of congressional concern with widespread abuses of power by union leadership." *Finnegan v. Leu*, 456 U.S. 431, 435, 102 S.Ct. 1867 1870, 72 L.Ed.2d 239 (1982). The "Bill of Rights" portion of that legislation was "aimed at enlarged protection for members of unions paralleling certain rights guaranteed by the Federal Constitution." Id. at 435, 102 S.Ct. at 1870. Congress "recognized that democracy would be assured only if union members are free to discuss union policies and criticize the leadership without fear of reprisal." Sheet Metal Workers' Intern. Ass'n v. Lynn, --- U.S. ----, ----, 109 S.Ct.

14

639, 645, 102 L.Ed.2d 700 (1989) (quoting United Steelworkers of Am. v. Sadlowski, 457 U.S. 102, 112, 102 S.Ct. 2339 2346, 72 L.Ed.2d 707 (1982)).

In proving a claim under Section 101(a)(2) of the LMRDA, a plaintiff must show that he exercised his right to "express any views, arguments or opinions," 29 U.S.C. Sec. 411(a)(2),. Plaintiff is not limited to such expression as one occurring in the context of a union election. "In fact, the statute refers separately to a union member's right to express his views upon candidates running for union office." *Guidry v. International Union of Operating Engineers, Local 406*, 882 F.2d 929 (C.A.5 (La.), 1989) vacated our judgment in *Guidry v. International Union of Operating Engineers*, 882 F.2d 929 (5th Cir.1989), and remanded for further proceedings in light of *Breininger v. Sheet Metal Workers International Association*, --- U.S. ----, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989). *See also Helmer v. Briody*, 759 F.Supp. 170 (S.D.N.Y., 1991) (where the court found an exception where an elected official of a local union was discharge for a claim could be had under section 101(a)(2) when a Union official retaliates against the member for cooperating with the corruption investigation and for filing charges against the Union officer).

As set forth above, Seymore limited and diminished the Plaintiff's right to speech relating directly to Seymore's arbitrary enforcement of the 24-hour rule and Seymore's mis-use of the Union credit card.  Mr. Jenks' open opposition to Seymore in voluntarily testifying at the Hall and at the Grand Jury and Plaintiff's attempt to notify the membership of Seymore's arbitrary enforcement of the 24-hour rule, demonstrate that the Plaintiff formally opposed Union leadership and Seymore retaliated against him in violation of the LMRDA.

E.       PLAINTIFF WAS DENIED THE RIGHT TO PARTICIPATE PURSUANT TO LMRDA 29 U.S.A. SEC. 411 (A)(1)

The LMRDA guarantees Mr. Jenks' right to "attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to

reasonable rules and regulations in such organization's constitution and bylaws." 29 U.S.C. sec. 411 (a)(1). Section 101(a)(2) of the LMRDA gives unions the right to provide reasonable rules in three situations: "(1) for conducting union meetings; (2) insuring individual responsibility to the union as an institution; and (3) for preventing any interference with the union's performance of its legal or contractual obligations."  However the rules cannot be carried out arbitrarily and punitively.

### 1.    Arbitrary and Retaliatory Enforcement of the 24 Hour Rule

The Union has enacted a rule called the 24-hour rule which provides: "No matter shall be called up for a vote unless it has been presented to the President and the Recording Secretary in writing for placement on the agenda at least 24 hours prior to the meeting, or unless it has been placed on the agenda by discussion at a prior meeting. This is not to be interpreted to deny any member the right to free discussion on any issues at any meetings." (Dkt. #32-2 p. 14)].

As set forth above, the letters dated June 22 and July 3, 2012 written by Michael Jenks were protected speech. The letters outlined his defenses and a statement of what had occurred with respect to his charges. And the letters noticed the membership that Seymore was not abiding by the 24-hour rule with respect to his letters. (Dkt. #32-9).

### 2.    October 22, 2012

In October 2012, Plaintiff submitted two letters of resignation; one for his position as Chair of the Board of Directors and the second for his position as alternate trustee. [Exhibit A (Jenks Affid. ¶12)]. Plaintiff resigned after he tested positive for drugs and was suspended. (Dkt. #32-9 p. 60). Seymore indicated that his letter did not satisfy the 24-hour rule. Approximately three to four days later, Plaintiff received the letter dated October 25, 2012, which reported the recommendation of the District to redo the motion to remove Mr. Jenks. (Dkt. #32-9 p. 61).

Seymore accepted the letter of resignation as to Plaintiff's position as an alternate Trustee and held an election to fill that position at the next regular meeting on November 12, 2012. After the vote to expel Mr. Jenks as an officer on the Board of Directors Mr. Jenks lost the right to run for office for five years. Seymore pushed forward with the vote to inflict the extraordinary punishment to so insure that Mr. Jenks would not be eligible to run against him.

F.      THE THREE PERSON PANEL WAS BIASED

In June 2012, Plaintiff' first appeal was before a three person panel at the District level. Plaintiff did not have a full and fair hearing  before the three-person panel. While this hearing need not contain "the full panoply of procedural safeguards found in criminal proceedings, the fundamental and traditional concepts of due process do apply." Tincher v. Piasecki, 520 F.2d 851, 854 (7th Cir.1975); see also Frye, 767 F.2d at 1223; Curtis, 687 F.2d at 1030. An essential element of this hearing must be "an impartial tribunal which arrives  at its decision on the basis of evidence which the accused has an opportunity to confront and rebut." Tincher, 520 F.2d at 854; see also Feltington v. Moving Picture Mach. Operators Union Local 306, 605 F.2d 1251, 1257 (2d Cir.1979), cert. denied, 446 U.S. 943, 100 S.Ct. 2169, 64 L.Ed.2d 799 (1980).

In addition to determining whether the union disciplinary proceeding was sufficient to support the finding of guilt, the LMRDA requires that the panel must be unbiased. The LMRDA was "designed to provide effective remedies for some of the perversions of decent unionism and flagrant exploitations and abuses." *Knight v. International Longshoreman's Ass'n 457 F.3d 331 (3rd Cir. 2006).* The International Longshoremen's Association ("ILA"), was one of the unions rife with abuse targeted by the LMRDA. *Id.*

One of the three individuals on the panel was Wilbert Rowell, the International Vice President who signed but did not draft the letter informing Mr. Jenks that he was ineligible to run

for office in the December 2012 election. Mr. Rowell did not have personal knowledge of Mr. Jenks' eligibility to be on the ballot for office in December 2013, he merely signed a letter drafted by another based upon hearsay. (Dkt. #32-4). Mr. Jenks did not know at the time he presented evidence in July 2012, that Mr. Rowell was biased and therefore the panel was biased. [Exhibit A (Jenks Affid. ¶36)].

G.   BREACH OF THE DUTY OF FAIR REPRESENTATION

A union breaches its duty of fair representation if its actions are either "arbitrary, discriminatory, or in bad faith" (this) applies to all union activity… a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a "wide range of reasonableness," *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953), as to be irrational. Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67, 111 S. Ct. 1127, 1130, 113 L. Ed. 2d 51 (1991).

The Union breaches the duty of fair representation when a proceeding is essentially a sham. *Bianchi v. Roadway Exp., Inc.,* 441 F.3d 1278, 1282 (11th Cir. 2006). In the instant case, the evidence viewed in the light most favorable to the Plaintiff, demonstrates that the manner in which Seymore conducted the election at the November 12, 2012, union meeting was as much of a sham as was the three person District panel in which one member was biased.

When one of three panelists is biased, the Union breaches the duty of fair representation. The right to complain about the panel can be waived if the Plaintiff did not object and it was known to him at the time of the hearing that one of the panelists was biased. *See Bianchi v. Roadway Exp., Inc.*, 441 F.3d 1278, 1285 (11th Cir. 2006) where the Court determine that had the Plaintiff waived his right to object after the fact because he knew that a panelist was biased). *See also Roadway Exp., Inc. v. N.L.R.B.*, 427 F. App'x 838, 841 (11th Cir. 2011) (where the issue

of bias was presented again to the NLRB which determined that the Plaintiff did not waive his right and the Union breached its duty of fair representation).

In the instant case, Plaintiff has not waived his right to complain about the bias of the three person panel after the fact because he did not know that one of the panelists, Wilbert Rowell was a friend of Seymore's. Further Rowell's bias can be inferred by his act of signing a letter disqualifying the Plaintiff based upon hearsay. (Dkt. #32-4 p. 17-18).

### H.     PLAINTIFF EXHAUSTED HIS ADMINISTRATIVE REMEDIES TO THE POINT OF FUTILITY

The final determination by the International Longshoreman's Association AFL-CIO that Mr. Jenks had had a fair election on November 12, 2012 in spite of admitting: (1) that the Union did not follow procedural and parliamentary procedures; and (2) that the Union did not permit Mr. Jenks to speak (to present evidence) also amounts to a sham review. Given the evidence that the so many of the Union proceedings were a sham, it is not difficult to see why the Plaintiff did not appeal the November 12, 2012 election and determined that any further appeals to the District or the International would be futile.  Plaintiff is only required to exhaust his administrative remedies to the point of futility.

Section 101(a)(4) of the LMRDA, 29 U.S.C. Sec. 411(a)(4), allows courts in their discretion to require that a union member exhaust his internal remedies before filing suit. See 29 U.S.C. Sec. 411(a)(4); *Hammons v. Adams,* 783 F.2d 597, 603 (5th Cir.1986); (cit. omit). Before a union member may bring suit against his union for breach of the duty of fair representation under section 301 of the LMRA, 29 U.S.C. Sec. 185, the member must either exhaust union remedies or show an adequate reason for not doing so. *Clayton v. International Union,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981). Courts have discretion to decide whether to require such exhaustion. *Id*. at 451 U.S. at 689, 101 S.Ct. at 2095. Factors relevant to the inquiry of

whether to require exhaustion are: (1) whether union officials are so hostile to the member that he cannot hope to obtain a fair hearing; (2) whether the union procedures are adequate; and (3) whether requiring exhaustion would unreasonably delay the member in pursuing his rights. *Id.* In the instant case the first of these exceptions is applicable.

In the instant case, the evidence set forth above and in Plaintiff statement of facts in response to the Union's Material facts in dispute, viewed in the light most favorable to the Plaintiff as the nonmoving party demonstrates that Plaintiff meets the prerequisites set forth above: (a) the Seymore is still a Vice President of the International Longshoremen's Association, AFL-CIO with his friend Vice President Wilbert Rowell. It is clear that the union procedures are inadequate, Seymore arbitrarily denied Mr. Jenks the opportunity to present evidence in compliance with the 24-hour rule, and the Seymore  and Recording Secretary did not abide by the parliamentary procedure set forth in the Bylaws or in Robert's Rules in general. The process has already taken an inordinate amount of time.   The next election scheduled election will occur in December 2016 and 2019. In the interim, if any officer resigns or is otherwise removed from office, Plaintiff will not be able to exercise his rights as a member to pursue any position until after 2017 as a result of the retaliatory discipline he received without due process and in violation of his rights to engage in protected free speech concerning union business at regular union meetings.

The Plaintiff has appealed the discipline and violations of his due procedural due process rights to the point of futility.  The District Office of the International had expressed "concerns regarding the manner in which the vote was taken at the June 11, 2012 general membership meeting" and recommended a redo. (Dkt. #32-2). It was abundantly clear based upon the

deviation from the established meeting order of business and Seymore's refusal to let Mr. Jenks speak, that the Union procedures were inadequate.

Mr. Jenks' complaint is directed at those officials who would hear his claims. Mr. Jenks should be excused for any alleged failure to exhaust his internal remedies. *Hayes v. Brotherhood of Ry. and Airline Clerks/Allied Servs. Div.*, 734 F.2d 219 (5th Cir.), cert. denied, 469 U.S. 935, 105 S.Ct. 336, 83 L.Ed.2d 272 (1984). The abuse of power demonstrated by Seymore is evidence of his animus towards Mr. Jenks.

## I.      PLAINTIFF'S ALLEGED INELIGIBILITY

Plaintiff sought to enjoin the election pursuant to his rights of due process so that he could have a hearing regarding the determination of his ineligibility to be on the ballot. This court has previously held that "a hearing that comports with the requirements of due process, and an expedited appeal to the membership must be allowed, (and) if he is convicted, such appeal to be heard on a date prior to the date of the rescheduled nomination." *Waring v. Int'l Longshoremen's Ass'n, Local 1414 of Savannah, Ga.*, 653 F. Supp. 374, 380 (S.D. Ga. 1986).

Vindication of Plaintiff's eligibility claims based upon his drug suspension are now subject to the requirements of Title IV because the election has been held and his claims are now moot. Under Title IV Plaintiff concedes that  claims as to his eligibility based upon his drug suspension  may only be brought in Federal-court suits only *after* the election has been held and only by the Secretary of Labor. *Calhoon v. Harvey*, 379 U.S. 134, 141-42, 85 S. Ct. 292, 297, 13 L. Ed. 2d 190 (1964).

## IV.      CONCLUSION

Plaintiff Michael Jenks brings the instant action for damages from the violations by the Union in illegally suspending him from his office on the Board of Directors in violation of his

due process rights under sec. 101(a) (5) of the LMDRA. The Union disregarded the Union membership votes rejecting the disciplined proposed by the Executive committee for an alleged violation of the Constitution and Bylaws of the Union; the Union illegally disciplined him by calling for an election that removed the Plaintiff from office in violation of the Bylaws and did not afford him due process which had the severe result of diminishing Plaintiff's right as a union member to seek an office for five years.  Further, the Union disregarded the membership vote to accept his resignation which also would have protected his right as a union member to seek office and but moved forward to remove him without due process and with apparent malice because the Plaintiff testified against the former president in a federal grand jury hearing and attempted to inform the membership of the president's wrongdoings.

For the above reasons, Plaintiff respectfully asks that the Court DENY Defendant's Motion for Summary Judgment.

This 30th day of April, 2014.

/s/ Gwendolyn Fortson Waring
Gwendolyn Fortson Waring
Georgia Bar Number:  270110
221 W. 31st Street
Savannah, GA 31401
(912) 477-5590
(912) 238-0207 FAX
gswaring@aol.com

**ATTORNEY FOR PLAINTIFF**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| MICHAEL JENKS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | CIVIL ACTION NO. |
| vs. | * | 4:13-CV-00177 |
| | * | |
| INTERNATIONAL LONGSHOREMAN | * | |
| ASSOCIATION, LOCAL 1414, SAVANNAH | * | |
| GEORGIA | * | |
| | * | |
| Defendant. | * | |

**CERTIFICATE OF SERVICE**

This is to certify that I have on this day served all the parties in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF"), which was generated as a result of electronic filing.

This 30th day of April, 2014.

/s/ Gwendolyn Fortson Waring
Gwendolyn Fortson Waring
Georgia Bar Number:  270110
221 W. 31st Street
Savannah, GA 31401
(912) 477-5590
(912) 238-0207 FAX
gswaring@aol.com

**ATTORNEY FOR PLAINTIFF**