## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| **MICHAEL JENKS, SR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO.: 4:13-cv-00177-BAE-GRS** |
| | ) | |
| **INTERNATIONAL LONGSHOREMEN'S** | ) | |
| **ASSOCIATION LOCAL NUMBER 1414,** | ) | |
| **SAVANNAH, GEORGIA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### *THE UNION'S REPLY TO PLAINTIFF'S RESPONSE TO THE UNION'S MOTION FOR SUMMARY JUDGMENT*

**COMES NOW DEFENDANT, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, LOCAL 1414** (hereinafter the "Union"), by and through its undersigned counsel, and files this, its *Union's Reply to Plaintiff's Response to The Union's Motion for Summary Judgment* and shows this Court the following:

**I.**  **Facts - Plaintiff's Statement of Facts and Response to the Union's LR 56.1 Statement of Material Facts as to Which No Genuine Issue Exists for Trial and Conclusions of Law**

This District has established a procedure under *S.D. Ga. Local Rule 56.1* for filing a statement of material facts, with the purpose of aiding the Court in identifying the disputed factual issues.[1] Plaintiff filed his *Statement of Material Facts* and does not dispute, or states that he is unable to admit or deny,[2] all of the Union's *Statements* except the following: P.17-18, ¶23; P.18-19, ¶¶26-27; P.19-20, ¶29; P.23, ¶37; P.28, ¶60; P.29-30, ¶64; P.30-31, ¶¶68-70; P.33, ¶77; P.35, ¶84; and P.36, ¶88.

---

[1]*Bank of Ozarks v. Kingsland Hospitality, LLC*, 2012 U.S. Dist. LEXIS 144666 (S.D. Ga. Oct. 5, 2012).

[2]*Rusinowski v. Vill. of Hillside*, 2014 U.S. Dist. LEXIS 15194, 7-9 (N.D. Ill. Feb. 6, 2014): where Plaintiff responded to Statements not with any evidence, but with the unhelpful declaration that "Plaintiff neither admits nor denies [statement 32]..." The Court held that: "Plaintiff's response should have indicated what basis, if any, Plaintiff has to contest...[the fact]. If Plaintiff cannot marshal any evidence to show...[the fact], then the Court - whether on summary judgment or at trial - will have no choice but to rule on the basis of the evidence presented by the...[moving party]. In short, Plaintiff's non-response fails to show that there is a genuine factual dispute."

## II.   <u>Legal Analysis</u>

## A.   **Summary Judgment Standard**

Summary judgment serves to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."[3] Summary Judgment is appropriate here because the Union has met its initial burden by demonstrating with pleadings, depositions, and affidavits that there are no genuine issues of material fact and that the Union is entitled to judgment as a matter of law.[4] The burden shifted to Plaintiff and he was required to come forward with admissible evidence of specific facts that "do more than simply show that there is some metaphysical doubt as to the material facts."[5]

However, throughout *Plaintiff's Response in Opposition to the Union's Statement of Facts*[6] and *Plaintiff's Response to the Union's Motion for Summary Judgment*[7] (hereinafter Plaintiff's "*Response*"), Plaintiff makes bald factual assertions without evidentiary support,[8] argumentative statements, or makes assertions which are immaterial to this case.[9] Accordingly, Plaintiff has failed to meet the requirements of the *Federal Rules* to come forward with evidentiary materials which show

---

[3]*Sutherland v. St. Lawrence*, 2009 U.S. Dist. LEXIS 131748 (S.D. Ga. Aug. 17, 2009).

[4]Fed. R. Civ. P. 56(c).

[5]*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[6]<u>Doc. 43-1</u>, *Plaintiff's Response to the Union's Lr 56.1 Statement of Material Facts as to Which No Genuine Issue Exists for Trial and Conclusions of Law*, P.1-13.

[7]<u>Doc. 43</u>, *Response Brief in Opposition*.

[8]For instance, in <u>Doc. 43-1</u>, P. 6, *Second Full Paragraph*, Plaintiff states that the Union Executive Board held a hearing on April 24, 2012 on the past Union President's charge against the Plaintiff and that the minutes of the meeting are set forth in the minutes of the April 23, 2012 regular membership meeting citing to <u>Doc. 32-8</u>, P. 11. This is simply not true. The minutes from the April 23, 2012 regular membership meeting are referencing a different charge against Plaintiff which was heard on April 12, 2012 by the Executive Board. Additionally, Plaintiff claims that there was an April 12, 2012 membership meeting, but there was not. <u>Doc. 43-1</u>, P. 6. Likewise, Plaintiff references a citation at <u>Doc. 32-8</u>, July 9, 2012 minutes, p. 81, for which there are not any minutes from that particular day.

[9]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

there is a genuine issue of material fact.[10] Thus, Plaintiff has not properly supported his allegations with proof, and summary judgment in the Union's favor is proper.[11]

**B.    Plaintiff Cannot Demonstrate the Existence of a Triable, Material Factual Issue and the Union is Entitled to Judgment as a Matter of Law**

    **(1)    The Secretary of Labor has Exclusive Jurisdiction over Plaintiff's Claims**

        **(a)    Privilege of Being a Candidate for Elective Union Office Is Not among Membership Rights Protected by the LMRDA.**

Plaintiff claims that he has a substantive right to seek higher office within the Union and that the determination regarding his eligibility to be nominated and run for office was not in accordance with the LMRDA.[12] Plaintiff's premise that the LMRDA specifically provides a right to run for office is based on an erroneous interpretation of the LMRDA. Nothing in the language of Title I of the LMRDA affords Plaintiff a substantive right to seek higher office within the Union as Plaintiff claims.[13] Plaintiff points to dicta in the case of *Hall v. Cole*, which was a case that mostly dealt with the availability of attorneys' fees under the LMRDA.[14] In no way did the Supreme Court in *Hall v. Cole* decide the issue here in this case of whether a member of a union can be precluded from running for office in the future when the member was found to have violated the constitution of the union.[15]

As Plaintiff admits, his claims based on his ineligibility as a result of his positive drug test for cocaine are subject to the requirements of Title IV and are now moot.[16]

---

[10]Fed. R. Civ. P. 56(c)(1)(A), and (e)(2)

[11]Fed.R.Civ.P.56(c)(1)(A),(e)(2); *Bennett v. Chitwood*, 2013 U.S. App. LEXIS 10399 (11th Cir. Ga. 2013).

[12]Doc. 43, *Response Brief in Opposition*, P.1 and P.3: "Title I of the LMRDA was specifically designed to protect the union member's right to seek higher office within the union." Citing *Hall v. Cole*, 412 U.S. 1 (1973).

[13]*Ferrer v. Int'l Longshoremen's Ass'n (ILA) AFL-CIO*, 671 F. Supp. 2d 276, 287-288 (D.P.R. 2009): "Nowhere in Section 411 is a member of a union given the right to run for office." *U.S. v. International Brotherhood of Teamsters*, 988 F. Supp. 759, 766 (S.D.N.Y. 1997): finding that LMRDA does not guarantee the right to hold office or the privilege of being a candidate for union office.

[14]*Hall v. Cole*, 412 U.S. 1 (1973): Supreme Court approved a fee award to a union member who had successfully sued his union to enforce his rights to freedom of speech under Title I of LMRDA, 29 U.S.C. § 412.

[15]*Ferrer v. Int'l Longshoremen's Ass'n (ILA) AFL-CIO*, 671 F. Supp. 2d 276, 287-288 (D.P.R. 2009); *U.S. v. International Brotherhood of Teamsters*, 988 F. Supp. 759, 766 (S.D.N.Y. 1997).

[16]Doc. 43, *Response Brief in Opposition.*, P.21, ¶ I. Plaintiff's Alleged Ineligibility.

Likewise, Plaintiff was ineligible to be nominated and run for office as a result of his removal from office for conduct unbecoming of a Union officer which was detrimental to the welfare of the Union.[17] However, Plaintiff fails to concede that his claims based on his ineligibility as a result of his removal from office are subject to the requirements of Title IV and are now moot.

Although Plaintiff alleges in his *Response* that certain rights have been violated under Title I, these alleged violations are all based on Plaintiff's removal from elected office.[18] Plaintiff's Title I claims are really Title IV claims, and only the Secretary of Labor is authorized to pursue said claims.[19]

In order for the Plaintiff to properly bring a Title IV claim, he was required to exhaust his intra-union remedies prior to filing a complaint with the Secretary of Labor.[20] In that regard, it is undisputed that Plaintiff: (1) failed to file a complaint with the Secretary of Labor regarding his removal from office after exhausting his administrative remedies on February 25, 2013;[21] and (2) failed to exhaust his available intra-union remedies involving the November 19, 2013 eligibility determination.[22] Therefore, Plaintiff has failed to exhaust his administrative remedies as required under Title IV and this Court lacks subject matter jurisdiction over Plaintiff's claims regarding union office.[23]

Lastly, because the election has been held and the term of office Plaintiff was removed from, and claims a right to, ended on December 31, 2013, his claims involving both his removal from office

---

[17]Doc. 32-9, **Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.66, L.20 thru P.67, L.8; attached thereto as Ex. "Q", *2013-11-19, Ltr from W. Rowell Stating not Eligible for Officer Elections*.

[18]*Pruitt v. United Brotherhood of Carpenters & Joiners*, 518 F. Supp. 61, 63 (N.D. Ga. 1981).

[19]29 U.S.C. §481(b); and *Pruitt v. United Brotherhood of Carpenters & Joiners*, 518 F. Supp. 61, 63 (N.D. Ga. 1981); and *BLE International Reform Committee v. Sytsma*, 802 F.2d 180, 183 (6th Cir. Ohio 1986).

[20]29 U.S.C. § 482: "within one calendar month thereafter alleging the violation of any provision of section 401 [29 USCS § 481] (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers)."

[21]**Ex. "1"**, *Aff. of Willie J. Seymore*, P.5-6, ¶23, Att. "S": *February 25, 2013 International Determination Regarding Jenks Appeal*; **Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.65, L.12 thru P.66, L.3; attached thereto as Ex. "O", *February 25, 2013 International Determination Regarding Jenks Appeal*.

[22]Doc. 32-9, **Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.16-17, L.23-25 and L.1-11; attached thereto as Ex. "A", *2012-12-12, Jenks' Appeal to International and Supporting Documents Totaling Twenty-Eight (28) Pages*.

[23]29 U.S.C. § 482(a); and *Calhoon v. Harvey*, 379 U.S. 134, 141-42 (1964).

on June 11, 2012,[24] and the November 19, 2013 determination regarding his eligibility, are both now moot because the election is over, Plaintiff was otherwise ineligible because of his cocaine use, and Plaintiff's prospective eligibility to run for office he has not even been nominated for is not ripe.[25]

### (2)     Applicability of LMRDA 29 U.S.C. §411(a)(2) and Retaliation

29 U.S.C. § 411(a)(2) provides: "Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business *properly before the meeting*, subject to the organization's established and reasonable rules pertaining the conduct of meetings . . . ."[26]

### (a)     Plaintiff Failed to Adequately Plead a Free Speech Claim

Here, Plaintiff participated in drafting a *Joint Status Report*, filed December 12, 2013, wherein the Plaintiff set forth a summary of the disputed facts and disputed legal issues.[27] Yet in that document, Plaintiff did not mention at all any issues related to his alleged free speech claim.

Likewise, *Plaintiff's First Amended Complaint* does not mention speech and only has one (1)

---

[24]Doc. 1, *Plaintiff's Original Complaint*, P. 6, ¶34; Doc. 32-2, **Ex. "1(A)"**, *Depo. of Willie J. Seymore*, P.32, L. 1-16; P.63, L.14-22; and P. 64-65; L.7-25 and L.1-16; Doc. 32-7, **Ex. "4"**, *Aff. of Timothy Mackey*, P.2, ¶5-7, Att. "E": *April 24, 2012 Executive Board Meeting Minutes*; Att. "F": *May 14, 2012 Regular Meeting Minutes*; Att. "G": *May 28, 2012 Regular Meeting Minutes*; Att. "H", *June 11, 2012 Regular Meeting Minutes*; and Doc. 32-8, **Ex. "4(A)"**, *Depo of Timothy Mackey*, P.35, L.11 thru P.40, L.9.

[25]*McDonald v. Oliver*, 525 F.2d 1217, 1225 (5th Cir. Miss. 1976): "Under the facts of this case we have no difficulty in concluding that the expiration of plaintiffs' two-year term of office and the holding of a scheduled election for Local officers while this appeal was in progress has extinguished the underlying controversy and rendered this case moot..."; and *Stevens v. Northwest Ind. Dist. Council, United Bhd. of Carpenters*, 20 F.3d 720, 724 (7th Cir. Ind. 1994), fn. 11: discussing the case and controversy requirement of Article III standing and the concept of mootness.

[26]29 U.S.C. § 411(a)(2) (emphasis added).

[27]Doc. 22, *Joint Status Report*, P.4-5, ¶8: "Plaintiff contends that the Union illegally violated his due process rights in removing him from office...The effect of the removal was to bar him from holding office for five years...Defendant improperly removed his name off of the December 2013 ballot without due process..."; and ¶9: " Whether the Union violated Plaintiff's due process rights when it held an election to remove him from office and refused and failed to let him speak; 2. Whether the Union retaliated against the Plaintiff and administered unfair discipline in removing the Plaintiff from office...4. Whether the failure to properly process the grievance against the Plaintiff amounted to the Defendant's breach of the duty of fair representation..."

cause of action based on due process;[28] and *Plaintiff's Second Amended Complaint* does not mention a claim based on free speech at all and only focused on his eligibility to be nominated for the election, which has already been held and is entirely governed by Title IV of the LMRDA.[29]

The only reference Plaintiff makes to a free speech claim in the pleadings is found in Count Four (4) of *Plaintiff's Original Complaint*, which contains the following allegation: "The above referenced acts and omissions amount to violations of the right of Plaintiff to express his views, arguments and opinions at various meetings of the Union upon business properly before the meeting in violation of his right to freedom of speech and assembly pursuant to 20 U.S.C.a§411(A)(1)."[30]

Plaintiff now contends in his *Response* to the *Union's Motion for Summary Judgment* that his removal from office was the direct result of the following allegedly protected speech: (1) *February 27, 2012 Correspondence*; (2) *June 22, 2012 Correspondence*; (3) *July 3, 2012 Correspondence*; and (4) when, approximately three (3) years earlier, he allegedly testified against the past Union President at a federal investigation at the Union Hall and at the Federal Grand Jury.[31]

In this case, Plaintiff has failed to establish that: (1) his conduct constituted an exercise of free speech protected by the LMRDA; (2) he was subject to adverse action; and (3) the adverse action was causally connected to the exercise of free speech.[32]

---

[28]Doc. 15, *Plaintiff's First Amended Complaint*.

[29]Doc. 21, *Plaintiff's Second Amended Complaint*.

[30]Doc. 1, *Plaintiff's Original Complaint*: the only acts and omissions that could be construed as being part of a free speech claim are at ¶11: "Plaintiff provided truthful information regarding the financial practices of President Willie Seymore."; ¶14: "President Seymore resented and retaliated against the Plaintiff for providing evidence regarding President Seymore's misuse of certain credit cards and finances."; ¶36: "Willie Seymore did not permit the motion, and did not permit anyone to speak on the matter."; ¶43: "Willie Seymore did not permit debate or discussion by Mr. Jenks on the motion..."; ¶49: "The Union failed to permit discussion on the improper motion to remove the Plaintiff in violation of 29 U.S.Ca. 411(A)(1)."; and ¶50: "The Union did not permit the plaintiff and other to discuss, argue, or express opinions on the improper motion."

[31]Doc. 43, *Response Brief in Opposition*., P.12, ¶¶ D.1.b. and D.1.c.

[32]*Carroll v. Int'l Ass'n of Machinists & Aero. Workers*, 2006 U.S. Dist. LEXIS 95920, 10-14, at Fn. 1 (N.D. Ga. Mar. 15, 2006): "Some courts construe the Supreme Court's decision in *Sheet Metal Workers' Int'l Ass'n v. Lynn*, 488 U.S. 347...to require that the adverse action be the 'direct result' of the protected speech." (Citations omitted).

###### (b)    The Content of Plaintiff's Allegedly Protected Speech Did Not Constitute an Exercise of Free Speech Protected by the LMRDA

The U.S. Supreme Court *Finnegan v. Leu* held that in order to establish a violation of free speech protection under the LMRDA, the content of the speech must be examined to determine whether it is protected speech.[33] The range of protected speech is substantially smaller than the range of protected speech under the *First Amendment*.[34] The general scope of protected speech is that which relates to union elections or the administration or democratic governance of the Union.[35]

###### (i)    Content of the Allegedly Protected Speech Contained in the Feb. 27, 2012, June 22, 2012, and July 3, 2012 Correspondences

In analogizing situations under the LMRDA with situations in the *First Amendment* context, courts have held that protection under 29 U.S.C. § 411(a)(2) is limited to speech that relates to general interests of the union membership at large, and not when union members or elected officers speak out about matters that relate solely to that individual's interest.[36] According to Plaintiff, the February 27, 2012 correspondence "set forth Plaintiff's criticism of Seymore's arbitrary enforcement of the 24-hour rule *as applied to Plaintiff*."[37] Similarly, Plaintiff claims that the June 22, 2012 letter: "*outlined his defenses* and a statement of what had occurred *with respect to his charges*. And the letter notices the membership that Seymore was not abiding by the 24-hour rule *with respect to his letters*."[38] Likewise, Plaintiff claims that the July 3, 2012 letter: "*outlined his defenses* and a statement of what had occurred *with respect to his charges*. And the letter notices the membership that Seymore was not abiding by

---

[33] *Finnegan v. Leu*, 456 U.S. 431, 441 (1982).

[34] *United Steelworkers of Am. v. Sadlowski*, 457 U.S. 102, 110-111 (1982): discussing Congressional intent as to LMRDA free speech protection.

[35] *Retail Clerks Union Local 648 v. Retail Clerks International Assn.*, 299 F.Supp. 1012, 1021 (D.C. 1969).

[36] *Hylla v. Transp. Communs. Int'l Union*, 536 F.3d 911, 916 (8th Cir. Minn. 2008).

[37] Doc. 43, *Response Brief in Opposition.*, P.12, ¶ D.1.c.

[38] Doc. 43, *Resp. Brief in Opp.*, P.16, ¶ E.1 (second paragraph under Section 1) citing to Doc. 32-9.

the 24-hour rule *with respect to his letters*."[39] Here, the alleged speech is not protected because each of the correspondences drafted by Plaintiff were personal grievances about the way he was being treated and did not relate to anything that involved the interests of the Union generally.[40]

**(ii)     Content of the Allegedly Protected Speech Contained in the Alleged Testimony by Plaintiff in a Federal Investigation**

Plaintiff submits that he engaged in protected speech when he testified against the past Union President at a federal investigation at the Union Hall and at the Federal Grand Jury.[41] The Eleventh Circuit acknowledges a content-based line of reasoning to distinguish "member speech" from "officer speech."[42] During the time of the allegedly protected speech, Plaintiff was a Union officer who allegedly volunteered to speak with government officials.[43]

Plaintiff states in his *Affidavit* that, according to the *Union's Constitution and Bylaws*, as part of his duty as an officer of the Union he had financial oversight of financial responsibilities.[44] As such, under the holding in *Dolan*,[45] Plaintiff's alleged speech (according to Plaintiff) advanced his duties of office and as such was no longer membership speech. Therefore, the protections of 29 U.S.C. § 411(a)(2) for membership speech do not apply to this alleged officer speech by Plaintiff.

**(c)     Adverse Action and the Nature of the Alleged Discipline**

29 U.S.C. §529 protects union membership rights, not union officers, against unlawful

---

[39]<u>Doc. 43</u>, *Resp. Brief in Opp*., P.16, ¶ E.1 (second paragraph under Section 1) citing to <u>Doc. 32-9</u>.

[40]*Hylla v. Transp. Communs. Int'l Union*, 536 F.3d 911, 916 (8th Cir. Minn. 2008); and *Helmer v Briody*, 759 F Supp 170, 176-177 (S.D.N.Y. 1991).

[41]<u>Doc. 43</u>, *Response Brief in Opposition*., P.12, ¶¶ D.1.b. and D.1.c.

[42]*Dolan v. Transport Workers Union*,  746 F.2d 733, 742-743.

[43]<u>Doc. 43-2</u>, *Exhibit A, Jenks Affid.*, 28.

[44]<u>Doc. 32-2</u>, *Bylaws*, Sec. 6a. p. 14.

[45]*Dolan v. Transport Workers Union*,  746 F.2d 733, 742-743.

imposition of discipline.[46] In this case, Plaintiff was removed from office as a result of conduct unbecoming of a Union officer which was detrimental to the welfare of the Union. Plaintiff remains a Union member to this day and the removal did not interfere with Plaintiff's membership rights.[47]

### (i)    The LMRDA Was Not Violated Because Plaintiff Was Removed from Elected Office by the Vote of the Membership

The cases following *Finnegan* recognize two (2) exceptions to the rule that a union's discipline of an individual union employee does not give rise to a claim under Title I of the LMRDA. The Supreme Court in *Lynn* reasoned that unlike an appointed union official, the discharge of an elected official denies union members "the representative of their choice."[48] However, Plaintiff does not come within this exception to *Finnegan* because he was removed by the Union membership, so they were not denied the representative of their choice - they overwhelmingly rejected him as a representative.

In *Finnegan*, the plaintiffs were terminated for political reasons by the union's President.[49] The LMRDA's overriding objective was to ensure that unions would be democratically governed, and responsive to the will of the union membership. Far from being inconsistent with this purpose, the ability of the membership to remove an elected union officer who is found guilty conduct unbecoming of an Union officer and who is an admitted cocaine user, is an integral part of ensuring a union administration's responsiveness to the mandate of the union election.[50] Here, even if the alleged speech

---

[46]*Laborers' Dist. Council v Laborers' Int'l Union* (2004, DC Dist Col) 306 F Supp 2d 22; *Collins v Pennsylvania Tel. Union, etc.* (1976, WD Pa) 418 F Supp 50; *Sheridan v United Brotherhood of Carpenters & Joiners* (1962, CA3 Del) 306 F2d 152: 29 U.S.C. §529 did not afford remedy to business agent of union who had been removed from elected office prior to expiration of term by vote of membership of union.

[47]*Helmer v Briody*, 759 F Supp 170 (1991), SD NY).

[48]*Sheet Metal Workers' Intl Assoc. v. Lynn*, 488 U.S. 347, 353-355 (1989).

[49]*Finnegan v. Leu*, 456 U.S. 431, 441 (1982).

[50]*Tucker v. Bieber*, 900 F.2d 973, 978 (6th Cir. 1990): "Title I ensures that every union member may challenge the union leadership; it does not guarantee that those who challenge it will be appointed to or remain on the elected leadership's staff."

was protected, the removal from Union office is not the nature of discipline that the LMRDA protects because Plaintiff was directly accountable to the members who elected him, and because he was validly removed from office for a violation of rules defined in the *Union's Constitution and Bylaws*.

<b>(ii)      Plaintiff's Removal Was Not Part of a Purposeful and Deliberate Attempt to Suppress Dissent Within the Union</b>

Another exception to *Finnegan* is where the employee is disciplined as "part of [a] purposeful and deliberate attempt . . . to suppress dissent within the union."[51] To fall within the exception, a plaintiff must plead and prove by "clear and convincing proof" that his mistreatment "was part of a series of oppressive acts by the union leadership that directly threaten the freedom of members to speak out."[52]  In the present case, such "established union history or articulated policy . . . part of a purposeful and deliberate attempt by union officials to suppress dissent" is nowhere alleged or supported.

Plaintiff's allegations in his *Original Complaint*; the *First Amended Complaint*; the *Second Amended Complaint*; and the *Joint Status Report*, while difficult to discern, do no more than reveal Plaintiff's belief that the past Union President brought a charge against him in connection with Plaintiff's potential candidacy for a Union office, that he had not announced at the time.[53]

Regarding the past Union President's alleged ill will towards Plaintiff, Plaintiff's conclusory allegations are not supported by specifically pled facts sufficient to allow a reasonable inference of wrongdoing. For example, Plaintiff alleges that "Seymore had a personal vendetta and retaliated

---

[51]*Dilacio v. New York City Dist. Council of the United Bhd. of Carpenters & Joiners of Am.*, 593 F. Supp. 2d 571, 579-585 (S.D.N.Y. 2008): claim under 29 USCS § 411, was dismissed under Rule 12(b)(6) for failure to state a claim because LMRDA protected union members' rights as members, not individual's right to employment with union, and officer's claims did not come within exception to this rule because he failed to show that these actions were part of purposeful and deliberate attempt to suppress dissent within union.

[52]*Dilacio v. New York City Dist. Council of the United Bhd. of Carpenters & Joiners of Am.*, 593 F. Supp. 2d 571, 579-585 (S.D.N.Y. 2008) (citations omitted).

[53]Doc. 1, *Plaintiff's Original Complaint*;  Doc. 15, *Plaintiff's First Amended Complaint*; Doc. 21, *Plaintiff's Second Amended Complaint*; and Doc. 22, *Joint Status Report*, P.4-5, ¶8.

Page 10 of  25

against the Plaintiff because Mr. Jenks voluntarily testified against him in a federal investigation of Seymore's mis-use of the Union credit card; and because Mr. Jenks was going to run against him in the December 2013 election."[54] This is not a well-pleaded allegation of fact. Plaintiff has no personal knowledge of the past Union President's subjective motivation. Plaintiff's allegation is no more than speculation and conjecture, without any specific allegations or citations to the record to support an inference of an improper motive. Such allegations of personal conflict fail to state a viable claim under the LMRDA that the freedom of all union members had been impacted by the past Union President's conduct.[55] Plaintiff cannot amend his *Complaint* now for the third time with conclusory allegations in his *Response* and the Union is entitled to judgment as a matter of law on this issue.

(d)   **Causation**[56]

Even assuming arguendo that his alleged speech was protected, causation is an essential element of Plaintiff's case. In order to establish a causal connection and survive summary judgment, Plaintiff must show that the Union was subjectively motivated to take the adverse action because of the protected speech.[57] Plaintiff must do this by pointing to evidence in the record which shows that

---

[54]Doc. 43, *Plaintiff's Response to Union's Motion for Summary Judgment*, P. 14, under the heading ¶ D.3(a) "(a) Jenks formally opposed Seymore and was a Threat" - second full paragraph.

[55]Doc. 43, *Response Brief in Opposition*., P.14, ¶ D.3(a): Plaintiff makes the following statement without any citations in arguing that he formally opposed the past Union President and was considered a threat: "The facts viewed in the light most favorable to the Plaintiff as the nonmoving party, present sufficient evidence that at a finder of fact could conclude that Seymore had a personal vendetta and retaliated against the Plaintiff because Mr. Jenks voluntarily testified against him in a federal investigation of Seymore's mis-use of the Union credit card; and because Mr. Jenks was going to run against him in the December 2013 election." Plaintiff states in his *Affidavit* that: "Seymore observed that Mr. Jenks voluntarily testified against him." (Doc.43-2, *Jenks Affid*., P. 5, ¶28). However, this paragraph does not support this contention. As a matter of fact, the only evidence was that the financial secretary and the then Chairman of the Board of Directors were involved in the investigation and there is no evidence that these individuals were retaliated against for conducting the investigation. (Doc.43-2, *Jenks Affid*., P. 14).

[56]Some courts construe the Supreme Court's decision in *Sheet Metal Workers' Int'l Ass'n v. Lynn*, 488 U.S. 347 (1989), to require that the adverse action be the "direct result" of the protected speech. See, e.g., *Williams v. United Steel Workers of Am.*, 234 F. Supp. 2d 542, 549 (M.D.N.C. 2002) (citing *Lynn*, 488 U.S. 347, 354).

[57]*Castle v. Appalachian Technical Coll*., 631 F.3d 1194, 1197 (11th Cir. 2011).

the Union membership who removed him from office were aware of his allegedly protected speech; that they voted to remove him as the result of his allegedly protected speech; and further show a temporal proximity between the alleged protected speech and his removal.[58]

### (i) The Correspondences Are Not Causally Related to the Removal

Plaintiff's claims for retaliation under 29 U.S.C. § 411(a)(2) of LMRDA fail because there is no evidence of a causal connection between Plaintiff's written correspondences (February 27, 2012; June 22, 2012; and July 3, 2012) and his removal from office (June 11, 2012). There is no evidence that the membership who voted to remove Plaintiff had any knowledge of the content of Plaintiff's correspondence or that it effected their decision to remove him from office.[59]

The lack of temporal proximity alone is sufficient to defeat a reasonable inference of causation in this case.[60] Plaintiff was removed from office on June 11, 2012 and the June 22, 2012 and July 3, 2012 correspondence were drafted and dated after his removal as part of an attempted appeal. Plaintiff refers to a February 27, 2012 correspondence for the first time in his *Response*, which is immaterial to this case. Said correspondence was a charge written by Plaintiff in response to the charge that the past Union President wrote against Plaintiff and was voluntarily dismissed by the Plaintiff.[61]

---

[58]*Casumpang v. ILWU, Local 142*, 269 F.3d 1042, 1059 (9th Cir. 2001): analogizing causation under LMRDA to Title VII. (citations omitted).

[59]*Carroll v Int'l Ass'n of Machinists & Aero. Workers* (2006, ND Ga) 2006 U.S. Dist. LEXIS 95920; 181 L.R.R.M. 2668, affd (2006, CA11 Ga) 221 Fed Appx 810.

[60]*Carroll v Int'l Ass'n of Machinists & Aero. Workers* (2006, ND Ga) 2006 U.S. Dist. LEXIS 95920; 181 L.R.R.M. 2668, affd (2006, CA11 Ga) 221 Fed Appx 810: holding that in the analogous Title VII retaliation context, even several months between the protected activity and the adverse action is often too remote to permit such an inference. Citing to Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (citing cases holding that three and four-month periods were insufficient); see also Higdon v. Jackson, 393 F.3d 1211, 1220-21 (11th Cir. 2004) (holding three-month period between protected expression and adverse action, absent other evidence of causation, insufficient to establish temporal proximity).

[61]Doc. 32-9, **Ex. 5**, *Depo. of Plaintiff, Michael Jenks, Sr.*, P.19, L.6 through P.20, L.25 (attached thereto as Ex. "D", *2012-02-27, Ltr from Jenks to Board re Emergency Executive Board Meeting on 02/15/12*); and P.24, L23 through P.25, L.7 (attached thereto as Ex. "E", *2012-03-20, Executive Board Committee terms of Agreement*).

### (ii)    The Alleged Testimony Is Not Causally Related to the Removal

It is sufficient to defeat a reasonable inference of causation in this case where approximately three (3) years passed between the alleged speech in question and Plaintiff's removal from office.[62] The charge and investigation Plaintiff refers to involving the past Union President occurred in April, 2009.[63] Plaintiff was removed from office on June 11, 2012. Plaintiff cannot present any direct evidence of retaliation and no reasonable finder of fact could infer a causal connection between the alleged protected activity and the adverse action. Therefore, Plaintiff cannot demonstrate the existence of a triable, material factual issue and the Union is entitled to judgment as a matter of law.

### (e)    The Union's *Rules* are Reasonable

Plaintiff's speech was never the subject of discipline. Even if it was determined that Plaintiff was disciplined because of his speech, protection under §29 U.S.C. § 411(a)(2) is subject to reasonable union rules.[64] 29 U.S.C. §411(a)(2) gives unions three (3) specific grounds on which they could discipline members' speech: "(1) for conducting union meetings; (2) insuring individual responsibility to the union as an institution; and (3) for preventing any interference with the union's performance of its legal or contractual obligations."[65]

---

[62]*Higdon v. Jackson*, 393 F.3d 1211, 1220-21 (11th Cir. 2004): holding three-month period between protected expression and adverse action insufficient to establish temporal proximity.

[63]Doc. 32-10, **Ex. "6"**, *Dep. of Gregory Eady*, Ex. "6": *April 7, 2009 Charge Against Past Union President.*

[64]*Hylla v. Transp. Communs. Int'l Union*, 536 F.3d 911, 916 (8th Cir. Minn. 2008).

[65]*Bishop v. Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers*, 310 F. Supp. 2d 33, 39-40 (D.D.C. 2004): "Section 101 (a) (2) 'incorporates 'a principal First Amendment value--the right to speak one's mind without fear of reprisal,' although its scope is more limited than the First Amendment....in determining validity of union rule, First Amendment principles 'may be helpful, although they are not controlling'...Instead, union rules, 'are valid under § 101(a)(2) if they are reasonable. Section 101(a)(2) gives unions 'three specific grounds on which they could discipline members' speech. Unions could provide reasonable rules: (1) for conducting union meetings; (2) for insuring individual responsibility to the union as an institution; and (3) for preventing any interference with the union's performance of its legal or contractual obligations.'" (Citations omitted).

### (i)    Twenty-Four (24) Hour Rule is Reasonable

The Twenty-Four (24) Hour Rule is reasonable and does not violate the LMRDA. Here, the Union's rule requiring that no matter shall be called up for a vote unless it has been presented to the proper Union officials at least twenty-four (24) hours prior to the meeting (or placed on the agenda by discussion at a prior meeting) is not unreasonable because it does not restrict all letters from being read. The rule also provides fair warning as to when it is triggered, so it is not vague. At most, the twenty-four (24) hour rule resulted in a delay in the reading of Plaintiff's letters to the membership.

### (ii)    *Union Constitution and By-Laws*, Article XII, Rule 2 is Reasonable

Plaintiff admits that his removal from office did not deprive him of a member speech right.[66] However, Plaintiff argues that under the holding in *Dolan*,[67] the determination made by the District Union regarding his ineligibility to be nominated for office on November 19, 2013 restricted his right to speech as a member by declaring him ineligible for nomination under *Article XII, Rule 2* for a period of five (5) years from the date of his removal from office on June 11, 2012.[68]

As a threshold issue, the result of the District Union's November 19, 2013 eligibility determinations for the positive drug test and for the removal from office were not appealed.[69] Therefore, Plaintiff has failed to exhaust his administrative remedies in regard to his eligibility or the reasonableness of the *Rules* as they apply to the determination regarding his eligibility.

---

[66]Doc. 43, *Response Brief in Opposition*., P.10, ¶ D.1.a.

[67]*Dolan v. Transport Workers Union of America*, 746 F.2d 733, 743 (11th Cir. 1984).

[68]Doc. 32-9, **Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.66, L.20 thru P.67, L.8; attached thereto as Ex. "Q", *2013-11-19, Ltr from W. Rowell Stating not Eligible for Officer Elections*.

[69]Doc. 32-9, **Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.16-17, L.23-25 and L.1-11; attached thereto as Ex. "A", *2012-12-12, Jenks' Appeal to International and Supporting Documents Totaling Twenty-Eight (28) Pages*.

Additionally, contrary to what Plaintiff argues, the Court in *Dolan* did not hold that union rules restricting removed officers from running for office for any period of time are per se unreasonable.[70] In *Dolan*, the International Committee "amended the Board's action as to Dolan's ineligibility to hold office...holding her ineligible to occupy any appointive or elective position in the union until restoration of eligibility by the International Executive Council."[71] The provision in *Dolan* gave unfettered discretion to the International Executive Council to determine the plaintiff's eligibility to run for office, which according to the rule itself, could have been permanently enforced.

In this case, Plaintiff is ineligible to be nominated for Union office under the *Union's Constitution and By-Laws*, *Article XII, Rule 2*, which restricts the ability of removed officers from running for office for a period of five (5) years. Said rule is reasonable in that it is limited in time.[72] Additionally, the ineligibility in this case was not part of the punishment as it was in *Dolan*, but is a collateral consequence of his removal from office.

### (f)      Alleged Refusal to Accept Plaintiff's Resignation

During the time that the Plaintiff's case was pending after being remanded from the District Union to the Union membership for a vote, Plaintiff attempted to resign from his Union positions.

### (i)      Alleged Resignation as Union Chairman of the Board

Plaintiff's attempted resignation failed because Plaintiff was removed from office pursuant to a membership vote on June 11, 2012.[73] *Art. XIX, §4* of the *ILA Int'l Constitution and Bylaws* provides

---

[70]*Dolan v. Transport Workers Union of America*, 746 F.2d 733, 743 (11th Cir. 1984).

[71]*Dolan v. Transport Workers Union*, 746 F.2d 733, 736 (11th Cir. Fla. 1984).

[72]*U.S. v. Gaskell*, 134 F.3d 1039, 1045 (11th Cir. 1998): probationer lawfully prohibited from working with children for 5 years*; U.S. v. Villarin Gerena*, 553 F.2d 723, 726-27 (1st Cir. 1977); *U.S. v. Beros*, 833 F.2d 455, 467 (3d Cir. 1987): probationer convicted of embezzling union funds lawfully barred from holding elected union office.

[73]Doc. 32-7, **Ex. "4"**, *Aff. of Timothy Mackey*, P.2, ¶8, Att. "H": *June 11, 2012 Regular Meeting Minutes*; Doc. 32-9, **Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.16, L.7-9; and P.33, L.22 thru P.34, L.23; attached thereto as Ex. "A", *2012-12-12, Jenks' Appeal to International and Supporting Documents Totaling Twenty-Eight (28) Pages* (*2012-10-15, Ltr from Fitzgerald to Seymore & Jenks attaching 09-28-12 District Determination*, P.20-23 of 28));

that "[a]n appeal taken under this Article shall not operate to stay the action or decision appealed from unless the body to which the appeal is taken shall so order."[74] In this case, there was no such order staying the removal and Plaintiff did not have an office to resign from on October 22, 2012.[75]

Additionally, Plaintiff's resignation letter was submitted to the Union at 4:20 PM on October 22, 2012. Thereafter, at the membership meeting on the same day (October 22, 2012), Plaintiff attempted to have his resignation letter accepted.[76] Pursuant to *Robert's Rules of Order*, the action was in violation of the *Union's Constitution and By-Laws* and was therefore null and void.[77]

Lastly, because Plaintiff's attempted resignation was pending at the November 12, 2012 membership meeting, if the vote had been in Plaintiff's favor, he would have been given the opportunity to withdrawal his letter of resignation before it was officially voted upon.

### (ii)    Alleged Resignation as Trustee of Taft-Hartley Benefit Funds

Plaintiff claims that the past Union President accepted his letter of resignation as to Plaintiff's position as an alternate Trustee.[78] However, Plaintiff's resignation from the Board of Trustees was not

---

and  Doc. 32-2, **Ex. "1(A)"**, *Depo. of Willie J. Seymore*, P. 64-65; L.7-25 and L.1-16.

[74]Doc. 32-1, **Ex. "1"**, *Aff. of Willie J. Seymore*, P.2, ¶5, Att. "B": *ILA Intl. Const. & Bylaws*; P. 44, *Art. XIX, §4*.

[75]Doc. 32-9, **Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.16-17, L.23-25 and L.1-11; attached thereto as Ex. "A", *2012-12-12, Jenks' Appeal to International and Supporting Documents Totaling Twenty-Eight (28) Pages*.

[76]Doc. 32-1, **Ex. "1"**, *Aff. of Willie J. Seymore*, P.1, ¶4, Att. "A": *ILA Local 1414 Constitution and By-Laws*, Article IV, Section 3: ""No matter shall be called up for a vote unless it has been presented to the President and the Recording Secretary in writing for placement on the agenda at least 24 hours prior to the meeting, or unless it has been placed on the agenda by discussion at a prior meeting. This is not to be interpreted to deny any member the right to free discussion on any issues at any meeting."

[77]RONR (11th ed.), p. 251, §23, ll. 25-26: a) a main motion has been adopted that conflicts with the bylaws (or constitution) of the organization or assembly,...In all such cases, it is never too later to raise a point of order since any action so taken is null and void."

[78]Doc. 43, *Response Brief in Opposition.*, P.17: "Seymore accepted the letter of resignation as to Plaintiff's position as an alternate Trustee and held an election to fill that position at the next regular meeting on November 12, 2012."

accepted by the past Union President. That resignation was accepted by the Board of Trustees after being presented to the body it was addressed to at a meeting held on November 8, 2012.[79]

### (3)    Applicability of 29 U.S.C. §411(a)(5)'s Procedural Safeguards to Plaintiff

Courts have uniformly agreed that the procedural safeguards of 29 U.S.C. §411(A)(5) apply only to union members in regard to their membership status, and do not extend to officers who have been removed from office.[80] Even assuming, arguendo, that 29 U.S.C. §411(A)(5) is applicable to Plaintiff's allegations regarding his removal from office, Plaintiff was provided due process.

Plaintiff appealed both the *September 28, 2012 District Hearing Committee Determination* and the *November 12, 2012 Membership Vote* to remove him from office to the International Union on December 12, 2012.[81] On February 25, 2013, the International Union determined that Plaintiff's appeal of the September 28, 2012 determination involving his June 11, 2012 removal from office was untimely.[82] Therefore, Plaintiff failed to administratively exhaust his claims in this regard.

Plaintiff submits that it is undisputed that he was afforded due process at the May 12, 2012 regular membership meeting;[83] and does not claim that he lacked due process in front of the Union's Executive Board during the hearing on the original charges. However, Plaintiff does claim that his due process rights were denied because: (1) Plaintiff did not have notice of the motion to remove him from

---

[79]**Ex. "1"**, *Aff. of Prudence W. Gwyn*, <u>Att. "A"</u>: *November 8, 2012 GSA-ILA Welfare Fund Board of Trustees' Meeting Minutes.*

[80]*Caterina v. The International Brotherhood of Painters & Allied Trades, Local Union No. 30*, 1978 U.S. Dist. LEXIS 16351 (S.D. Ga. 1978).

[81]<u>Doc. 32-9</u>, **Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.16-17, L.23-25 and L.1-11; attached thereto as <u>Ex. "A"</u>, *2012-12-12, Jenks' Appeal to International and Supporting Documents Totaling Twenty-Eight (28) Pages.*

[82]<u>Doc. 32-1</u>, **Ex. "1"**, *Aff. of Willie J. Seymore*, P.5-6, ¶23, <u>Att. "S"</u>: *February 25, 2013 International Determination Regarding Jenks Appeal*; <u>Doc. 32-9</u>, **Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.65, L.12 thru P.66, L.3; attached thereto as <u>Ex. "O"</u>, *February 25, 2013 International Determination Regarding Jenks Appeal.*

[83]<u>Doc. 43</u>, *Response Brief in Opposition.*, P.6.

office at the June 11, 2012 membership meeting before being voted upon by the membership;[84] and

(2) Plaintiff did not have an opportunity to be heard prior to the re-vote on November 12, 2012.[85]

### (a)   June 11, 2012 Membership Meeting

Plaintiff states that the past Union President interpreted the *Union's Constitution and Bylaws* as allowing the membership to sua sponte remove an officer at a membership meeting.[86] The issue presented in this case is not so broad. The finding of guilt was not made by the membership sua sponte, but was made after Plaintiff was served with written specific charges; prepared his defense; and had a full and fair hearing on April 24, 2012 in front of the Union's Executive Board.[87]

The past Union President brought the charge against Plaintiff and provided evidence at the disciplinary hearing to support the charge made.[88] The Union Executive Board heard the evidence and made a decision. Although Plaintiff attempts to produce evidence in his *Response* that he was not guilty of the charges, Plaintiff never appealed the finding of guilt by the Union's Executive Board.[89] As the District Union stated in its *September 28, 2012 District Determination*, "the Executive Board

---

[84] Doc. 43, *Response Brief in Opposition.*, P.7-8, ¶C.2.a.

[85] Doc. 43, *Response Brief in Opposition.*, P.8-10, ¶C.2.c.

[86] Doc. 43, *Response Brief in Opposition.*, P.8-10, ¶C.2.c; and Doc. 43-2, *Exhibit A, Jenks Affid.*, 8.

[87] Doc. 32-8, **Ex. "4(A)"**, *Depo of Timothy Mackey*, P.35, L.11 thru P.40, L.9; and Doc. 32-7, **Ex. "4"**, *Aff. of Timothy Mackey*, P.2, ¶5, Att. "E": *April 24, 2012 Exec. Bd. Meeting Minutes*; P.2, ¶6, Att. "F": *May 12, 2012 Regular Meeting Minutes*; Doc. 32-2, **Ex. "1(A)"**, *Depo. of Willie J. Seymore*, P.32, L. 1-16; P.63, L.14-22; and P. 64-65; L.7-25 and L.1-16;

[88] *International Brotherhood of Boilermakers v. Hardeman*, 401 U.S. 233, 245-246 (U.S. 1971): "Section 101 (a)(5)(C) of the LMRDA guarantees union members a "full and fair" disciplinary hearing, and the parties and the lower federal courts are in full agreement that this guarantee requires the charging party to provide some evidence at the disciplinary hearing to support the charges made...A stricter standard...would be inconsistent with the apparent congressional intent to allow unions to govern their own affairs, and would require courts to judge the credibility of witnesses on the basis of what would be at best a cold record."

[89] Doc. 32-1, Exhibit 1, *Aff. of Willie J. Seymore* (with attachments), P.5, ¶18, Att. "N": *September 28, 2012 District Determination*; Att. "O": *October 15, 2012 Correspondence Attaching the September 28, 2012 District Determination.*

action finding Brother Jenks 'guilty' was not disturbed by the substitute motion."[90] Therefore, the only issue here is whether the sentence imposed by the membership is legal under 29 U.S.C. §411(a)(5).

Under the *Union's Constitution and By-laws*, the alternative sentences available for a violation of *Article XII, Rule 2* are: "fines, removal, or expulsion from office..." Therefore, Plaintiff was on notice that he was subject to removal or expulsion from office for violating *Article XII, Rule 2* when the recommendation was made to the Union membership regarding the sentence.[91] The membership is the highest governing authority in the Union, which has the power to decide all questions before it.[92]

Even if Plaintiff is correct that he did not receive notice that he may be removed from office for violating *Article XII, Rule 2*, following his appeal to the District Union, he was provided several written notices that the membership would be re-voting on the issue of his removal from office.[93]

### (b)    Opportunity to Be Heard Prior to the November 12, 2012 Re-vote

Plaintiff claims that: (1) "Seymore admits that an officer should be permitted to present evidence on his behalf at a membership meeting;" and that (2) "Mr. Jenks was not permitted to speak

---

[90] Doc. 32-1, Exhibit 1, *Aff. of Willie J. Seymore* (with attachments), P.5, ¶18, Att. "N": *September 28, 2012 District Determination*, P.2 (last full paragraph).

[91] Doc. 32-2, **Ex. "1(A)"**, *Depo. of Willie J. Seymore*, P.32, L. 1-16; P.63, L.14-22; and P. 64-65; L.7-25 and L.1-16: "[A]ll recommendations got to come to the membership...From any board. The membership got the last approval on -- anything coming through this union hall the membership got the last word. And that's been the practice of this union for my 37 years of being here."; Doc. 32-7, **Ex. "4"**, *Aff. of Timothy Mackey*, P.2, ¶5-7, Att. "E": *April 24, 2012 Exec. Bd Minutes*; Att. "F": *May 14, 2012 Regular Meeting Minutes*; Att. "G": *May 28, 2012 Regular Meeting Minutes*; Att. "H", *June 11, 2012 Regular Meeting Minutes*; Doc. 32-8, **Ex. "4(A)"**, *Depo of Timothy Mackey*, P.35, L.11 thru P.40, L.9.

[92] Doc. 43, *Response Brief in Opposition.*, P.8, ¶C.2.b (first full paragraph), citing Doc. 32-2, P. 63; and Doc. 32-8, **Ex. "4(A)"**, *Depo. of Timothy Mackey*, P.67-68, L.12-25; and L.1-2; and  Doc. 32-2, **Ex. "1(A)"**, *Depo. of Willie J. Seymore*, P.32, L. 1-16; and P.63, L.14-22.

[93] Doc. 32-1, **Ex. "1"**, *Aff. of Willie J. Seymore*, P.5, ¶18, Att. "N": *September 28, 2012 District Determination*; Att. "O": *October 15, 2012 Correspondence Attaching the September 28, 2012 District Determination*; Doc. 32-4, **Ex. "2(A)"**, *Depo. of Wilbert Rowell*, P.29, L.12 thru P.31, L.12; and Doc. 32-9, **Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.60, L.9-12; P.48, L.2-11; and Doc. 32-1, **Ex. "1"**, *Aff. of Willie J. Seymore*, P.5, ¶19, Att. "P": *October 25, 2012 notice Regarding District Order and Re-vote*; Doc. 32-9, **Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.61, L.16 thru P.62, L.14.

to the membership prior to the November 2012 union meeting vote to expel him from office."[94] Plaintiff further claims that: (1) "the International determined that 'parliamentary and procedural violations may have been committed' on November 12, 2012."[95] and that "The decision also recognized that Mr. Jenks did not have an opportunity to be heard."[96]

On February 25, 2013, the International Union ruled in favor of the Union on Plaintiff's appeal of the November 12, 2012 vote to remove Plaintiff from office.[97] Despite Plaintiff's claims to the contrary, Seymore did not make an admission that an officer should be permitted to present evidence on his behalf at a membership meeting; and there is no evidence the Union impeded Plaintiff's ability to speak to the membership prior to the November 12, 2012 membership meeting vote.

On the contrary, the International Union indicated in its determination on appeal that:

"Local 1414 provided sufficient notice to its membership that the November 12, 2012 vote would occur. Both Mr. Jenks and President Seymore had equal opportunities to encourage their supporters to attend and vote at the membership meeting. At this meeting Local 1414's membership voted to remove Mr. Jenks from office."[98]

There is no evidence that the Union prohibited Plaintiff from posting fliers or mailing notices to the membership regarding issues that he wanted the membership to be aware of prior to the re-vote. In that regard, Plaintiff testified at his deposition that he had the opportunity to be heard:

"You got notice October 25th, 2012 that there was going to be the revote on November 12th, 2012...? A. Yes...Q. You had an opportunity to get your supporters out to vote...right? A. No. Q. You didn't -- you had notice on the 25th and it was November 12th that the vote was to take place. You had 17 days in between there to talk to people about coming to vote in your favor; isn't that right? A. Well, I didn't -- well, yes."[99]

---

[94] Doc. 43, *Response Brief in Opposition*., P.8-10, ¶C.2.c.

[95] Doc. 32-9, P. 77.

[96] Doc. 32-9, P. 77.

[97] Doc. 32-9, P. 77.

[98] Doc. 32-9, P. 77.

[99] Doc. 32-9, **Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.61, L.16 thru P.62, L.14.

If Plaintiff's interpretation of 29 U.S.C. § 411(a)(5) were accepted, the statute would require the Union to reprocess the entire case at the membership meeting upon remand from the District Union instead of adhering to what the District Union ordered, which was to provide Plaintiff a forum to have notice of the re-vote and the opportunity to get his supporters out to vote.[100] Plaintiff had ample opportunity to encourage his supporters to attend and vote at the membership meeting.[101]

Plaintiff further claims that "the International determined that 'parliamentary and procedural violations may have been committed' on November 12, 2012."[102] However, the LMRDA "does not allow the recovery of damages for a union's violation of a technical internal rule that does not adversely affect a Member's due process rights" or contravene specific provisions in the LMRDA.[103]

Plaintiff has not shown how any of the alleged Union actions deprived him of a full and fair hearing or any rights of membership. Plaintiff had two (2) full hearings held in front of the Executive Board and again in front of the District Union's appeal committee. At the November 12, 2012 membership meeting the Union's membership voted in favor of Plaintiff's removal from office by a count of Sixty-Three (63) in favor of removing Plaintiff from office and Forty-Three (43) in favor of

---

[100]Doc. 32-1, **Ex. "1"**, *Aff. of Willie J. Seymore*, P.5, ¶18, Att. "N": *Sept. 28, 2012 District Determination*.

[101]Doc. 32-9, **Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.61, L.16 thru P.62, L.14.

[102]Doc. 32-9, P. 77.

[103]*Sampson v. Dist. Council of N.Y. City*, 2012 U.S. Dist. LEXIS 141822, 17-18 (S.D.N.Y. Sept. 27, 2012); *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 387 (2d Cir. N.Y. 2001): "A violation of a procedural provision of a union's constitution is actionable only if the violation deprived the party of a full and fair hearing under the LMRDA."; *Yager v. Carey*, 159 F.3d 638 (D.C. Cir. 1998): "A court considering a claim for relief under the LMRDA because a party alleges that an internal union disciplinary hearing violated the union's constitution must conduct a two-step inquiry: (1) the court must find that the hearing violated the constitution; and (2) it must find that the violation deprived plaintiffs of a fair trial within the meaning of the LMRDA."; *Wellman v. International Union of Operating Engineers, Local 501*, 812 F.2d 1204, 1206 (9th Cir. Nev. 1987): "Even assuming a union fails to follow its own rule, it does not violate the LMRDA unless the violation of its internal rule also contravenes specific prohibitions in the LMRDA."

Plaintiff remaining in office.[104] It is an accepted proposition of law that the Court "is bound to accept the interpretation placed on the Constitution by the [Union] if it is fair and reasonable."[105] Here, the Union has conformed to democratic principles and has a right to conduct its own internal affairs.[106]

### (4)   Defendant Union Does Not Affect Plaintiff's Relationship with the Union

Plaintiff cites to *Bianchi v. Roadway Exp., Inc.*,[107] and argues that the Union breached its duty of fair representation to Plaintiff because: (1) the manner in which the past Union President conducted the re-vote at the November 12, 2012 membership meeting was a sham; and (2) that the three (3) person District Union appeal panel was biased. However, the duty of fair representation extends only to matters involving an employee's dealings with his employer and does not affect Plaintiff's relationship with the Union.[108] A "union . . . can be held to represent employees unfairly only in regard to those matters as to which it represents them at all -- namely, 'rates of pay, wages, hours . . ., or other conditions of employment.'"[109] Therefore, Plaintiff has failed to plead a breach of the duty of fair representation and summary judgment is proper in the Union's favor on this count.

### (a)   The Order of Business at the November 12, 2012 is Immaterial

The Union's Recording Secretary, Timothy Mackey testified that the Union did not deviate from the order of business because the normal practice whenever something came from the District

---

[104]Doc. 32-9, **Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.62, L.11-14; Doc. 32-7, **Ex. "4"**, *Aff. of Timothy Mackey*, P.3, ¶11, Att. "K": *November 12, 2012 Regular Meeting Minutes*; Doc. 32-1, **Ex. "1"**, *Aff. of Willie J. Seymore*, P.5, ¶20.

[105]*Local 317 v. Nat. Post Office Mail Handlers*, 696 F.2d 1300, 1302 (11th Cir. 1983).

[106]*Wirtz v. Hotel, Motel & Club Employees Union*, 391 U.S. 492, 496 (U.S. 1968).

[107]*Bianchi v. Roadway Exp., Inc.*, 441 F.3d 1278, 1282 (11th Cir. 2006).

[108]*Bass v. International Brotherhood of Boilermakers*, 630 F.2d 1058 (5th Cir. 1980).

[109]*International Brotherhood of Teamsters, Local No. 310 v. NLRB*, 190 U.S. App. D.C. 279, 587 F.2d 1176, 1183 (D.C. Cir. 1978).

or the International is that it gets precedence and is put at the height of everything.[110] Plaintiff has offered no evidence of why it is material that the vote was taken at the beginning of the meeting, how Plaintiff was prejudiced by the timing of the vote, or how the 29 U.S.C. § 411(a)(5) procedures would have been of any use to him if the order of business had been followed.

### (b)   The District Union's Appeal Committee Was Unbiased

Plaintiff argues that: (1) the District Union's Appeal Committee was biased because Mr. Wilbert Rowell, International Union Vice President and District Union Officer, was a friend of the past Union President; and (2) bias can be inferred because Mr. Rowell, over a year later, signed the November 19, 2013 correspondence to Plaintiff informing him of his ineligibility to be nominated.[111]

In addition to Mr. Rowell, a District Union attorney was also on the three (3) person committee.[112] Following the de novo hearing, the District Union attorney wrote the order and the District Union's eighteen (18) person Executive Board voted on the matter affirming the attorney's opinion, making it an order of the District Union.[113] There is no evidence that the alleged bias of Mr.

---

[110]Doc. 32-8, Exhibit 4(A), *Depo. of Timothy Mackey*, P.111, L. 9 through P.113, L.25: "The normal practice would be for any order coming from the international, and my practice as recording secretary has always been, any order, anything coming from the international, be it a wage scale communication, that's put at the height of everything. So in this particular case we were dealing with a mandate, an order, from the district regarding a case that came before its tribunal that was held here. And they had written their order, which I had not seen, I had not seen. And so what happens was, what happens is typically there's a deviation from the normal route of business. So you just put that at the head of everything. That's why it's like it is...That's the way it's always been done..."

[111]Doc. 32-9, **Ex. "5"**, *Depo. of Michael Jenks, Sr.*, P.66, L.20 thru P.67, L.8; attached thereto as Ex. "Q", *2013-11-19, Ltr from W. Rowell Stating not Eligible for Officer Elections*.

[112]*Myers v. Affiliated Property Craftsmen*, 667 F.2d 817, 820 (9th Cir. 1982).

[113]Doc. 32-4, Exhibit 2(A), *Depo. of Wilbert Rowell*, P.24, L. 8 through P.26, L.23: "Q. And so if you can tell me the procedure, the attorney drafted a report? A. Uh-huh. Q. You and Mr. Dickens signed off on it; correct? A. Yes. Q. And then you submitted the report to the executive board; is that correct? A. To the president. To the president. Q. To the president? A. Yes. Q. And – A. He reviews it and then he sends it to all the vice presidents. Q. And there's a vote taken on it by the executive district board? A. Huh? Q. Is a vote taken on it by the district executive board? A. Yes, ma'am. Yes. Q. And are you on the executive board of the district? A. Yes. I'm on the executive, yes. Q. And you were part of that vote on Michael Jenks; is that correct? A. I'm on the committee. Q. So you were not? A. The people on the committee don't vote."

Rowell resulted in less than a full and fair hearing or that the District Union's attorney and all eighteen (18) members of the District Union's Executive Board were biased.

## III.    Conclusion

For all of the reasons set forth herein the Union's *Motion* should be granted and Plaintiff's claims against the Union should be dismissed with prejudice. Plaintiff has failed to meet the requirements of the *Federal Rules* to come forward with evidentiary materials which show there is a genuine issue of *material* fact and summary judgment should be entered in the Union's favor.[114] This Court should grant the *Union's Motion for Summary Judgment* upon the firm foundation of the case's uncontroverted facts and the rationales of *Celotex*[115] and *Anderson.*[116]

**WHEREFORE**, based upon the facts and applicable law stated herein, the Union respectfully requests the Court to grant the *Union's Motion for Summary Judgment*, and for such other and further relief as this Court deems just and proper.

Respectfully submitted this 14th day of May, 2014.

**BIGNAULT & CARTER**

**BY S/CHARLES S. HERMAN**
**GA BAR #142852**
**BIGNAULT & CARTER**
**PARK SOUTH - UNIT F9**
**7505 WATERS AVENUE**
**SAVANNAH, GEORGIA 31406**
**TELEPHONE:  (912) 356-0388**
**FACSIMILE  : (912) 356-0399**
**EMAIL: ATTYHERMAN@COMCAST.NET**

---

[114]Fed.R.Civ.P.56(c)(1)(A),(e)(2);and *Bennett v. Chitwood*, 2013 U.S.App.LEXIS 10399 (11th Cir.Ga.May 23, 2013).

[115]*Celotex,* 477 U.S. at 323.

[116]*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | |
|---|---|
| **MICHAEL JENKS, SR.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )   **CASE NO.: 4:13-cv-00177-BAE-GRS** |
| | ) |
| **INTERNATIONAL LONGSHOREMEN'S** | ) |
| **ASSOCIATION LOCAL NUMBER 1414,** | ) |
| **SAVANNAH, GEORGIA,** | ) |
| | ) |
| **Defendant.** | ) |

## *CERTIFICATE OF SERVICE*

This is to certify that I have on this day served all the parties in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF") which was generated as a result of electronic filing.

This 14th day of May, 2014.

**BIGNAULT & CARTER**

**BY S/CHARLES S. HERMAN**
**GA BAR #142852**
**BIGNAULT & CARTER**
**PARK SOUTH - UNIT F9**
**7505 WATERS AVENUE**
**SAVANNAH, GEORGIA 31406**
**TELEPHONE:  (912) 356-0388**
**FACSIMILE  : (912) 356-0399**
**EMAIL: ATTYHERMAN@COMCAST.NET**