UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

MICHAEL JENKS, SR.,

**Plaintiff,**

v.  4:13-cv-177

INTERNATIONAL
LONGSHOREMEN'S ASSOCIATION
LOCAL NUMBER 1414, SAVANNAH,
GEORGIA,

**Defendant.**

## ORDER

### I. INTRODUCTION

Plaintiff Michael Jenks, Sr., brings claims against the International Longshoremen's Association, Local 1414, Savannah, Georgia ("ILA") pursuant to the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 160(b); 187, and the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 411; 529. ECF No. 1 at 1. Jenks alleges ILA breached its duty of fair representation, unlawfully retaliated against him for cooperating with a government investigation, violated his right to freedom of speech and assembly, violated his due process rights, and illegally withheld him from the ballot for ILA president. ECF Nos. 1 at 10-11; 15 at 9-10; 21 at 4. ILA moves for summary judgment on all charges. ECF No. 32. The parties dispute the facts, but even in the light most favorable to Jenks, he fails to create a prima facie case of any actionable claim under the LMRDA, and the Court *GRANTS* ILA's Motion for Summary Judgment.

### II. BACKGROUND

Jenks is a veteran longshoreman with thirty-eight years of service. ECF No. 18-6 at 1-2. In 2012, he held offices as Chairman of the Board of Directors of ILA and Alternate Trustee of Local ILA Employers Welfare Board of Trustees. ECF No. 1 at 2, 6. In early 2012, ILA past President Willie Seymore brought two administrative grievances against Jenks: one for use of abusive, derogatory, and insulting language; and another for misuse of the Joseph White Room, a multipurpose room owned by ILA. ECF Nos. 32-9 at 6-7; 33 at 3-4. Seymore alleged that Jenks had personally taken payment from the NAACP for its use of the Joseph White room. ECF No. 32-9 at 7-9. Jenks responded by filing a grievance against Seymore. *Id.* at 53. The ensuing string of meetings and votes are the basis for many of Jenks's claims.

On March 30, 2012, the ILA Executive Board considered all three charges, but only resolved the charge against Jenks for abusive language, fining him $250.00.[1] *Id.* at 8. Jenks and Seymore agreed to continue the remaining charges.[2] *Id.* at 54. Seymore then rewrote the misappropriation charge to more precisely describe Troy Davis funeral repast allegation and served it on Jenks. ECF No. 33 at 5. On April 24, the Executive Board heard the amended charge against Jenks, finding him guilty and recommending a fine of $2500.00. *Id.* at 6.

---

[1] The ILA membership later voted to uphold the $250.00 fine against Jenks. ECF No. 33 at 5.
[2] Jenks later dismissed the charge against Seymore. ECF No. 32-9 at 56.

The membership rejected the fine, but subsequently voted to remove Jenks from his office. *Id.* at 7.

Jenks attempted to orally appeal his removal to the membership of ILA, but Seymore prohibited him from doing so on advice from Union counsel. *Id.* at 8. Jenks then formally appealed his removal to the Union's South Atlantic and Gulf Coast District office in Texas. ECF No. 32-9 at 39-40. The District appointed a panel for a de novo hearing regarding Jenks's removal from office. After a hearing, the panel issued a detailed finding of fact and recommended that the membership should re-vote on whether to remove Jenks from office. ECF No. 32-1 at 236-38.

Between the District's decision on appeal and the re-vote on the fate of Jenks's offices, Jenks tested positive for cocaine in a random drug screen. ECF No. 32-6 at 8. Jenks subsequently admitted to drug[3] use and voluntarily entered a treatment program. ECF No. 18-6 at 2.

On October 22, Jenks submitted resignation of his officer positions. ECF No. 32-9 at 47. The ILA declined to consider accepting the resignation by vote at the general membership meeting of the same day, citing a violation of the twenty-four hour rule of the ILA Constitution and By-Laws. ECF No. 32-1 at 15 ("No matter shall be called up for a vote unless it has been presented to the President and the Recording Secretary in writing for placement on the agenda at least 24 hours prior to the meeting

---

[3] Jenks states in his declaration that he violated the ILA policy on usage of "legal drugs." ECF No. 18-6 at 2. The result of the drug screening, ECF No. 32-6 at 8, speaks for itself.

. . . ."). On October 24, ILA member Latreana Johnson brought yet another charge against Jenks for conduct unbecoming an officer for the drug usage. ECF No. 32-9 at 59. The membership then voted to remove Jenks from office on November 12. *Id.* at 18. Jenks again appealed his removal to the Union's District office, but this time the District rejected the appeal and upheld the membership vote. *Id.* at 76-78.

About a year later, Jenks was nominated to run for ILA president and director in the 2013 elections. *Id.* at 80. The Union sent Jenks a letter on November 19, 2013 stating that he was ineligible as a candidate and his name would not appear on the ballot because he was

> suspended from the industry for a positive drug test during the period October 14, 2012 through November 21, 2012, and, therefore, [was] not working at the trade as required under the *Constitution and Rules of Order of the International Longshoremen's Association, AFL-CIO* prior to the nomination meeting as required by Article XIII, Section 3 [and because of his] removal from office [in 2012] under Article XII, Rule 2 of the *Local 1414 Constitution and Bylaws*, [he is] ineligible to hold any office in the Union at this time.

ECF No. 18-4 (italics in original). Jenks moved for an injunction halting the scheduled elections, which the Court denied on November 25, 2013. ECF Nos. 17; 19. ILA now moves for summary judgment on Jenks's remaining claims, arguing, most

generally, that LMRDA provides no protections to union officer positions.

## III. DISCUSSION

### A. Summary Judgment Standard

Courts "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on summary judgment, the Court views the facts and inferences from the record in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Reese v. Herbert*, 527 F.3d 1253, 1271 (11th Cir. 2008). Courts, moreover, may consider all materials in the record, not just those cited by the parties. Fed. R. Civ. P. 56(c)(3).

### B. Breach of Duty of Fair Representation

Jenks claims that ILA's failure to properly process his grievances and its refusal to accept his resignation constitute a failure to provide adequate representation. ECF No. 1 at 10. ILA contends that the LMRA's duty of fair representation only applies to a union member's dealings with employers. ECF No. 33 at 32.

Unions have a duty of fair representation to their members because unions serve as the members' exclusive bargaining representative. *Int'l Bhd. of Teamsters v. NLRB*, 587 F.2d 1176, 1183 (D.C. Cir. 1978). The duty extends to matters of pay rates, wages, hours, and other conditions of employment. *Id.* The duty does not extend to "union conduct that affects only an individual's relationship within the union structure . . . ." *Bass v. Int'l Bhd. of Boilermakers*, 630 F.2d 1058, 1063 (5th Cir. 1980).

Here, the ILA's alleged conduct "did not interfere in any way with the relationship" between Jenks and his employers, the member companies of the Georgia Stevedore Association.[4] *Id.* Jenks's three complaints do not even mention port employers. The duty of fair representation does not apply to union elections or offices, as these are strictly matters of union structure. Jenks has failed to establish an actionable breach of the duty of fair representation.

### C. Unlawful Retaliation

Jenks claims that ILA's handling of his disciplinary grievances is unlawful retaliation for his cooperation with a government investigation into the financial affairs of Seymore. ECF No. 1 at 10. ILA counters that causation is an element of a retaliation claim, and even if Seymore acted in retaliation, Jenks has presented no evidence of causation. ECF No. 33 at 22-24.

Section 101(a)(2) of Title I of the LMRDA protects the right of union members to express any "views, arguments, or opinions." 29 U.S.C. § 411(a)(2). "In order to establish a *prima facie* case of retaliatory discharge or discipline in violation of the LMRDA, Plaintiffs must establish that: (1) their conduct constituted an exercise of free speech protected by the

---

[4] Georgia Stevedore Association "is a group comprising several port employers doing similar stevedore work that have entered into a [collective bargaining agreement] with [ILA]." ECF No. 61 at 1, 4:12-cv-248.

3

LMRDA; (2) they were subject to an adverse action; and (3) the adverse action was causally connected to the exercise of protected free speech." *Carroll v. Int'l Ass'n of Machinists & Aerospace Workers*, No. 1:03-CV-3106-JTC, 2006 WL 4401479, at *4 (N.D. Ga. Mar. 15, 2006), *aff'd*, 221 F. App'x 810 (11th Cir. 2006).

"In order to establish a causal connection, the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech." ECF No. 43 at 13 (citing *Castle v. Appalachian Technical Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011)). A plaintiff must also demonstrate a temporal proximity between the protected speech and the retaliatory conduct. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). "If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." *Id.* A three or four month delay is sufficient to defeat causation on summary judgment. *Id.*

Although Jenks does not cite record evidence, he suggests that Seymore sought his downfall because Jenks testified against him in a federal grand jury proceeding. ECF No. 43 at 14-15. Even viewing this as sufficient subjective motivation for Seymore to take adverse action, Jenks testified against Seymore in April, 2009, *years* before the events at hand. As a matter of law, Jenks has failed to show causation on these grounds.

Again without citation to the record, Jenks contends that Seymore pursued charges because he viewed Jenks as a viable threat to his presidency in the 2013 elections. *Id.* at 14-15. This allegation also fails on causation. First, Latreana Johnson brought the drug-usage charge that ultimately led to Jenks's removal from office. Second, Seymore followed the ILA's twenty-four hour rule in rejecting Jenks's resignation. The exercise of a reasonable union rule is not actionable under the LMRDA. *United Steelworkers of Am. v. Sadlowski*, 457 U.S. 102, 111 (1982).

And third, Jenks's drug use defeats the subjective motivation aspect of causation. The Eleventh Circuit recently discussed a defendant's burden of production on summary judgment.

> [O]nce the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on [his motion for judgment as a matter of law or prior to trial on] summary judgment.

*Brannon v. Finkelstein*, ___ F.3d ___, No. 12-15988, 2014 WL 2748152, at *4 (11th Cir. June 18, 2014) (alterations in original). Here, even if Jenks's candidacy for president was a motivating factor behind his removal, expulsion from office based on Jenks's cocaine usage is a valid, independent basis entitling ILA to summary judgment.

Even assuming that Jenks could support his theory of why Seymore favored his

4

removal from office, the actions here fail, as a matter of law, to create a claim of retaliation under the LMRDA.

### D. Right to Freedom of Speech and Assembly

Jenks contends that his inability to hold office curtails his ability to speak freely on union matters. ECF No. 43 at 10-11. ILA argues that Jenks fails to plead a free speech claim, ECF No. 45 at 5-6, and that 29 U.S.C. § 411(a)(1) provides no substantive right to be elected to office, ECF No. 33 at 21-22.

The LMRDA guarantees that all members of the ILA "shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations." 29 U.S.C. § 411(a)(1). Prohibiting Jenks from seeking reelection for a period of time directly affects his ability to speak as a member. *Dolan v. Transp. Workers Union of Am.*, 746 F.2d 733, 743 (11th Cir. 1984). "[A] member's speech takes on added meaning and significance in the context of a legitimate campaign for elective office." *Id.* But a member has no claim if the infringement accords with "reasonable" union rules, and "some restrictions on the free speech rights of members are permissible." *Id.*

In *Dolan*, the president of the flight attendants union sued under the LMRDA claiming that removal from office infringed upon her free speech rights. *Id.* at 735-36. The facts at trial showed that "she was removed from office and rendered ineligible for reelection as discipline for expressing her views on certain subjects of union business." *Id.* at 737. The Court determined that she could sustain a cause of action on these facts, but reversed because the trial court improperly instructed the jury. *Id.* at 744.

Given this precedent, Jenks's claim would, in a vacuum, perhaps deserve a trial. However, Jenks's case is distinguishable from *Dolan*, in that ILC removed him from office for violating the union drug policy by using cocaine, not solely for his views on union business. ECF No. 32-9 at 18, 59, 76-78. The physical and dangerous nature of stevedore work necessitates policies against drug usage. And because a policy against drug usage is reasonable, the free speech restriction here for violating such policy is permissible.[5] Jenks has not established a violation of his free speech rights under the LMRDA.[6]

### E. Due Process Rights

Jenks claims that ILA violated his due process rights of 29 U.S.C. § 411(a)(5) by failing to serve him with written notice of the charges against him, failing to bring the charges to both the executive board and the union membership, failing to permit

---

[5] Cocaine usage also violates federal and state laws. *See* 21 U.S.C. § 844; O.C.G.A. § 16-13-30.

[6] Jenks also makes a rather confusing and conflicting statement in his brief opposing summary judgment: "The removal from office did not necessarily deprive Mr. Jenks of a member speech right." ECF No. 43 at 10. *Dolan* requires that Jenks prove the ILA deprived a member speech right, and not an officer speech right, to succeed under the LMRDA. 746 F.2d at 744. Given the above analysis, the Court need not determine if Jenks's admission precludes recovery.

5

discussion of the charges, and failing to permit him to present a proper defense. ECF Nos. 15 at 9; 21 at 4. ILA contends that it afforded necessary due process at all steps of Jenks's discipline proceedings, that § 411(a)(5) does not provide protection to union officers, and that § 411(a)(5) is inapplicable to the consequences of Jenks violating the union drug policy. ECF Nos. 33 at 24-31; 45 at 17-22.

Due process under § 411(a)(5) requires the union to refrain from disciplining a member "unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; [and] (C) afforded a full and fair hearing." But the due process rights only apply to union membership, and not union offices. *Caterina v. Int'l Bhd. of Painters & Allied Trades*, No. CV477-233, 1978 WL 1671, at *11 (S.D. Ga. July 21, 1978) (citing *Lux v. Blackman*, 546 F.2d 713, 716 (7th Cir. 1976); *Miller v. Holden*, 535 F.2d 912 (5th Cir. 1976); *Gabauer v. Woodcock*, 520 F.2d 1084 (8th Cir. 1975); *Grand Lodge of Int'l Assoc. of Machinists v. King*, 335 F.2d 340, 342 (9th Cir. 1964)). Therefore, Jenks's claim of violation of due process in removal from office is not actionable under § 411(a)(5) and ILA is entitled to summary judgment.

The fines, on the other hand, are subject to due process requirements of § 411(a)(5). *Caterina*, 1978 WL 1671 at *11-12. But Jenks concedes that ILA fulfilled his due process rights up to the May 28, 2012[7]

meeting when the general membership rejected a $2500.00 fine against him. ECF No. 43 at 6-7. And Jenks never once mentions the $250.00 fine for offensive language in any of the three complaints. ECF Nos. 1; 15; 21. The Court may not allow Jenks to replead his case in opposition to summary judgment. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). So, all of Jenks's claims under § 411(a)(5) fail, and ILA is entitled to summary judgment.

### F. Withholding of Jenks from ILA Ballot

Jenks concedes that his claim for injunctive relief relating to the 2013 union election is now moot. ECF No. 43 at 21. Summary judgment is in order.

### IV. CONCLUSION

Taking the evidence in the light most favorable to Jenks, he has failed to establish any actionable claims under federal labor law. The Court **GRANTS** summary judgment in favor of ILA.

This _8_ day of July 2014.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[7] Jenks misdates this meeting as May 12, 2012, but given the events that he describes occurring on the date, the Court matches it to the general membership meeting on May 28. ECF No. 33 at 7.

6